## CHRISMAN VS. JONES et al.

1. SURETIES: *Exoneration and contribution between parties.*

Rogers sued Glasscock before a justice of the peace, and attached his property. Chrisman and ·others became sureties for Glasscock on a bond to release the property. Rogers recovered judgment in the·suit, and Glasscock appealed to the circuit court, giving an appeal bond with the appellees as his sureties. Judgment was finally rendered against him in the circuit court, and his sureties in the appeal bond, for the debt, damages and cost. Without issuing execution on the judgment, Rogers then sued Chrisman on the release bond, and recovered judgment against him in the circuit court. He appealed to the supreme court, and the judgment was affirmed, with damages and cost. He paid this judgment, and then filed his bill against the appellees for contribution, not alleging insolvency of the principal, Glasscock. *Held:* 1. That Rogers had the right to sue the sureties on the release bond without issuing executi n on the judgment against Glasscock and his sureties on the appeal bond.

2. The attachment release bond was for the benefit o the sureties (if any) on the original debt as well as for the creditor, and if such sureties had been compelled to pay the debt, the sureties on the release bond would be compelled in equity to exonerate them; and likewise the sureties in the appeal bond, as between them and appellant, were primarily liable; and he was entitled to complete *exoneration* from *them*, and to *contribution* from his *co-sureties* in the *release* bond, to the extent of the judgment rendered in the circuit court, in the suit originally begun by attachment. Where successive securities for a debt have been given in judicial proceedings, at the request of the debtor alone, to enable him to prolong the litigation, whilst all will be liable to the creditor, they will, as between themselves, be liable to exoneration in the inverse order of their undertakings. Those who contract last become sureties not only for the

benefit of the creditor, but in exoneration of those who precede, and all will be liable to exonerate the original sureties for the debt, if there be any.

3. It was not necessary. as against the sureties in the appeal bond, to make Glasscock a party or to allege his insolvency. But as against the co-securities in the release bond he was a necessary party.

2. PARTIES, WANT OF: *Demurrer.*

A general demurrer does not reach the defect of want of proper parties.

APPEAL from *White* Circuit Court.
Hon. J. N. CYPERT, Judge.
*Coody* for appellant.
*Turner, contra.*

EAKIN, J. This case grew out of the matters involved in the case of *Rogers, ad., v. Glasscock, 25 Ark., 24,* and *Chrisman et al., v. Rogers, adm'r, 30 Ark., 351.*

The bill is by Francis M. Chrisman against Lucius M. Jones, Cader Sowell and Robert L. Glasscock, stating: That one Thomas J. Rogers, adm'r, etc., in 1865, had sued one Thomas J. Glasscock, by attachment, before a justice of the peace, for $118.48, with interest at 10 per cent. from the ninth of November, 1861. Complainant, with William Hicks and Robert L. Glasscock, became sureties on the bond of the defendant, in that suit, to release the property attached, and dissolve the attachment.

That judgment was rendered against said defendant, November 20, 1865, for said debt, $47.27, damages and costs. On the twenty-fourth, said defendant appealed to the circuit court, and the defendants in this case, Cader Sowell and L. M. Jones, became his sureties in the appeal bond. After litigation, during which there had been an appeal to this court, and a remand of the cause for error, judgment was rendered by the circuit court, on the third of May, 1870, against said defendant and his said sureties

on the appeal bond, Sowell and Jones, for said debt, and $99.25 damages, and costs.

That Rogers, the plaintiff in said suit, issued no execution or process upon said judgment, against said Sowell and Jones; but, on the sixteenth of June, 1870, sued complainant before a justice of the peace, upon the old bond given to discharge the attachment. The justice sustained a demurrer to the suit, upon which said Rogers appealed to the circuit court, where he recovered judgment against this complainant, in February, 1873, for $330 and costs. This was affirmed on appeal to this court. Whereupon, complainant was compelled to, and did, pay to said Rogers the whole amount recovered, and all costs, amounting in all to the sum of $451.25.

The bill prays contribution from said Sowell and Jones, the sureties on the appeal bond, as well as from Robert L. Glasscock, the co-surety of complainant on the bond dissolving the attachment, with a prayer for general relief.

The court sustained a general demurrer to the bill, which was thereupon dismissed, complainant declining to amend. An appeal was taken.

It is the law of this case (see *Chrisman et al. v. Rogers, supra*) that the complainant was not discharged from his liability on the attachment release bond, by the execution of the appeal bond. The creditor had the option to pursue his rights upon either security. This bill raises the question as to the status of the different sets of sureties amongst themselves. Whether they stand in equal plight, or are, any of them, upon being made to sustain the burden, entitled, as against the others, to exoneration or contribution.

The bond to release the attachment was executed in 1865, by which the complainant and his co-securities became

bound for the defendant, in that suit, that he would "answer plaintiff's demand, and pay and satisfy such judgment" as might be rendered against him *in that suit*.

The sureties became bound in the expectation that, upon the rendition of the judgment, execution might issue, at once, against their principal; or, if that were not done, the sureties would have the right to pay the judgment, be subrogated, and proceed at once to enforce it for their indemnification. They may be considered, of course, to have contemplated that the defendant might appeal, but such an appeal would not have interfered with their right to have the execution enforced for their protection, unless an appeal bond should be executed.

Such an appeal bond operates, in derogation of this right of a surety, to a speedy settlement of the matter. They are held, helpless, to await the result of proceedings over which they have no control, and which, as in this case, may be prolonged for years. Meanwhile, the defendant may become insolvent, and, if the original sureties should then be held *primarily* liable, and be themselves solvent, it would result that the second set of sureties would have been thus enabled to trifle with their rights in a wanton manner, without any danger to themselves. Besides, the costs of the suit would be materially increased, and interest accumulated against the original sureties, by proceedings which they could by no interference have controlled, and which could not have been taken, to their detriment, without the aid and intervention of the sureties on the appeal bond. As these proceedings are equally *in invitum* as to the plaintiff, it is not just that he should be deprived of any of his securities, and, in this matter, it has been held already that he may elect to sue the first set. But it is not equitable, as between the first and second set of

sureties, that the former should be held primarily liable. Whilst the creditor is left free, equity will adjust the rights, declare the liabilities and apportion the burdens of the sureties amongst themselves.

The sureties on the dissolving bond, by their obligation, placed themselves in the position of original sureties for the debt, to be ascertained by the judgment to be rendered in that suit. Their position was analogous to that of special bail put in by a defendant at common law. If there had been any original sureties on the face of the paper, the bond would have been for the benefit of the original sureties, as well as that of the creditor, and in the equitable adjustment, those sureties on the bond would have been liable to exonerate the original sureties, if the latter had been forced to pay the debt; and as to subsequent sureties given to prolong the legal proceedings, it is but fair, and an extension of the same equity, that the sureties in attachment would have the same rights, as the original sureties would have had against them.

The principle in equity seems to be well established, that when successive securities for debt have been given in judicial proceedings upon the request of the debtor alone, to enable him to prolong the litigation, whilst all will be liable directly to the creditor, they will be, as amongst themselves, liable to exoneration in the inverse order of their undertakings. That is to say, those who contract last become sureties, not only for the benefit of the creditor, but in exoneration of those who precede, and all will be liable to exonerate the original sureties for the debt, if any there be. See the cases collected in the American Notes to *Dering v. Earl of Winchelsea, 1 Leading Cases in Equity.* And in the case of *Brandinburg v. Flynn, 12 B. Mon. (Ky.), 397,* the court said, "they knew of no principle

on which a subsequent surety, who came to the aid of a debtor solely at his instance, and without the request or concurrence of the other sureties, could make them liable for immunity:" and that the cases had, on the contrary, established " that the prior sureties were under these circumstances entitled to be substituted to the remedies of the creditor against the subsequent surety." The cases upon this point are numerous, and may be found collected and arranged in *Mr. Brandt's work on Suretyship and Guaranty, p. 320, vol. 1, sec. 227; also ib., sec. 394.*

The result is that the facts of the bill show a right on the part of the complainant to complete exoneration against the sureties on the appeal bond, and to contribution against his co-surety on the dissolving bond, to the extent of the judgment for the debt and costs, rendered in the circuit court, in the suit originally begun by attachment.

The bill does not allege the insolvency of the principal, Thomas J. Glasscock, nor make him a party. As against the sureties in the appeal bond, that was not necessary. They were not co-sureties with complainant. As to him, being previously liable, they stood in the attitude of principals, and their liability to him in equity became direct. The complainant, on payment of the judgment, had the right to be subrogated to it against the defendant and his sureties on the appeal bond, notwithstanding the right of the creditor to proceed against either. The complainant seeks *contribution* only, but the greater equity includes the lesser.

As to Robert Glasscock, the co-surety of complainant in the dissolving bond, no proper proceedings could be had against him in equity without making the principal a party or showing cause why such a thing would be fruit-

less.  In the leading case on *contribution* (*Dering v. Earl of Winchelsea, 1 Cox, 318*), which was that of a bill by surety against his co-sureties, the objection was made that the principal had not been made a party.  Lord Eyre, C. B., said, " as a question of form it ought to have been brought on by demurrer ; but in substance, the insolvency of Mr. Dering may be collected from · the whole proceedings, which strongly imply it."  I think no reasonable man could take this bill as true, and explain the conduct of the parties as the natural result of any other state of facts than the inability of the principal to pay; otherwise there would be no trouble.  Nevertheless the court does not mean to encourage the practice of suing co-sureties for contribution without the principal or without explanation.  They are necessary parties, without whom the rights of the co-sureties amongst themselves can not be fully adjusted.  It is a rule of practice in chancery, founded on justice and convenience, to avoid multiplicity of suits.  The co-securities contribute to each other, and the principal is liable to all.  If he is in the same suit, the rights can be all adjusted.  But the equity of contribution is not contingent upon the insolvency of the principal.  It rises upon payment, and the principal is only a necessary party to its enforcement (unless he be insolvent), because he should be present to answer primarily, and take the ultimate burden without the necessity of other suits.

There are cases in Kentucky, and a few in other states, which seem to favor the idea that the liability to contribution is *contingent* on failure to collect of the principal, or upon his insolvency.  We have examined the grounds upon which these decisions are based, as cited by counsel, and can not yield assent to the broad conclusions drawn.

Those in Kentucky, which positively assert this contingent liability, seem to rest upon statutes, and to be peculiar to that state. The cases from other states are meager and inconclusive.

The demurrer should have been for want of parties. A general demurrer does not reach this defect (*Gantt's Dig., sec. 4565*). The bill does show equities against defendant before the court, and want of proper parties. Even if the sureties on the appeal bond were the only defendants, the principal would still be a proper party, if solvent, although perhaps not strictly necessary. The chancellor should have overruled the demurrer, and taken notice of the want of parties. He might have ordered the complainant to make the principal a party, or show by amendment to his bill that it would be useless.

For error in sustaining the demurrer of defendants, let the decree be reversed, and the cause remanded for further proceedings consistent with this opinion.