No. 4226

Second Circuit

McCLARY v. ENDOM'S TRANSFER & STORAGE GARAGE ET AL.

(February 16, 1932.   Opinion and Decree.)
(March 16, 1932.   Rehearing Refused.)

Before DREW, McGREGOR and STEPHENS, JJ.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, attorneys for plaintiff, appellee.

Munholland & Munholland, of Monroe, attorneys for defendants, appellants.

McGREGOR, J. This is a suit for damages arising out of a collision between plaintiff's Buick sedan and defendants' Yellow Cab at the intersection of Jackson and Grammont streets in the city of Monroe, Ouachita parish. On March 18, 1931, at about 9:15 o'clock p. m., the plaintiff's said automobile, driven by his minor son, seventeen years of age, and filled with passengers, was proceeding south on Jackson street, and defendants' Yellow Cab was traveling east on Grammont street. While both cars were attempting to cross the intersection, a collision occurred between them in the southwest quadrant of the intersection; that is, at a point south of the center of Grammont street and west of the center of Jackson street. Plaintiff's car went a few feet toward the southeast, turned halfway around, and fell on its left side, with the front end pointing in a westerly direction on Jackson street, and the four wheels extending toward the north. When it stopped in this position, it was just a few inches south of the intersection of the two streets and just east of the street railway tracks that run north and south in the center of Jackson street. The Yellow Cab stopped almost instantly and proceeded no further after the collision. All the occupants of the sedan, six in all, were lifted from it as it was lying on its left side and, fortunately, none of them received injuries.

The sedan was practically demolished, and the plaintiff brought this suit for $763.50, the sum which he estimates will be necessary to restore the car to its original condition. In his petition he alleges that the collision was the result of the negligence of the defendants' chauffeur in driving the Yellow Cab in a reckless manner in violation of law; that at the time of the accident the said chauffeur was acting within the scope of his employment and was performing service for his employers. Jackson street is a right of way street, and the traffic laws of the city of Monroe require that any person driving a vehicle from any intersecting street, such as Grammont, across or into it shall come to a full stop at a point not more than fifteen feet from the intersection and not proceed until he has ascertained that no vehicle is traveling the said right of way street sufficiently near to the intersection to render a collision or accident probable. Plaintiff alleges that defendants' chauffeur violated this provision of the law, in that he did not bring his car to a full stop at a point not more than fifteen feet from the intersection. It is also alleged that he violated the law, in that he was traveling at a rate of speed in excess of fifteen miles per hour, the maximum allowed by law on that street.

In their answer the defendants deny all negligence generally. They allege particularly that the accident was caused by the reckless, careless, and unlawful manner in which plaintiff's son drove the Buick sedan, and as plaintiffs in reconvention, pray for $7 damages for the injury done to their Yellow Cab in the collision.

Judgment was rendered in favor of the plaintiff by the trial judge for the sum of $400. The defendants appealed, and the plaintiff has answered the appeal and asked that the judgment be amended by increasing it to the amount originally prayed for in his petition.

The evidence in the case is conflicting. All the plaintiff's witnesses testify that the sedan was being driven at a rate of speed not to exceed fifteen or twenty miles per hour, and that the Yellow Cab, shortly before the collision, was being driven as

fast as forty-five miles per hour. Dr. W. V. Garnier, of Bastrop, La., testified that he was standing in a filling station at the northwest corner of the intersection at the time of the collision. He was facing the intersection and saw both cars before the collision and after it occurred. He states that plaintiff's sedan was being driven at a moderate rate of speed, about fifteen or twenty miles per hour, and that the Yellow Cab was going at the rate of forty-five miles per hour. He states positively that the cab did not stop at the intersection as required by law, but that the driver applied his brakes at about the edge of the intersection, and that the shriek of the brakes, the sliding of the wheels, and the impact of hitting the sedan were almost simultaneous. He testifies positively that the sedan entered the intersection first and had practically crossed the center of Grammont street when the cab, comin~ ´ Jm the west, struck it broadside at a point near the right rear wheel or fender. Sol Snyder, also a resident of Bastrop, La., was an eye-witness to the accident. He had brought Dr. Garnier to Monroe in his automobile. At the moment of the collision he was sitting in his car, which was parked on the south side of Grammont street, facing east, just west of the intersection where the two cars collided. This position was just south of and across the street from where Dr. Garnier was standing, so that he had as perfect a view of the accident as the doctor did, except that it was from a different angle. As the Yellow Cab approached the intersection, it came from the west or rear of Snyder's position, but at the immediate time of the collision the cars were clearly in front of him in full view. He stated that he saw the Buick sedan traveling in a southerly direction on the right side of Jackson street at a speed of about twenty miles per hour, and that the front wheels were well beyond the center of Grammont street when it was struck by the Yellow Cab broadside near the right rear wheel. He is positive in his testimony that just prior to the accident the Yellow Cab was proceeding in an easterly direction on Grammont street, running at a speed of about forty-five miles per hour, and that it did not stop prior to reaching the intersection. Mr. J. B. McCoy, an employee of the filling station, with whom Dr. Garnier was transacting business, did not see the accident itself as his back was turned to it, but he testified that the impact between the two cars produced a loud noise which, of course, attracted his attention. As soon as he could turn around and look in the direction from which the loud noise came, he saw the Buick sedan on its left side in Jackson street, just past the intersection, as has heretofore been described.

Samuel H. McClary, Jr., son of the plaintiff, testified that he was the driver of the Buick sedan at the time of the collision. It is his testimony that he was proceeding south on the right-hand side of Jackson street at a speed of about fifteen miles per hour, and that he was well into the intersection when he saw the defendants' Yellow Cab coming from the west on Grammont street, traveling at a very rapid rate of speed; that the Yellow Cab did not stop before entering the intersection and attempting to cross Jackson street; that he tried to avoid the collision by swerving his car to the left, but was prevented from doing so by the Yellow Cab striking his car near the right rear wheel. Mrs. Samuel H. McClary, wife of the plaintiff and mother of the young man who was driving, testified to practically the same state of facts that her son did. She had every opportunity to know exactly how the collision occurred as she was sitting on the front seat at the right of her son.

On the rear seat of the sedan were Mrs. J. A. Irving, two Misses Boynton and a little child. Mrs. Irving and one of the Misses Boynton testified for the plaintiff. Their testimony corroborates that of Mrs. McClary and her son in every respect. They are positive that the sedan was traveling no faster than fifteen miles per hour and that the Yellow Cab was running at a rate of forty-five miles per hour.

Karl Stevens, the driver of the Yellow Cab, testified that his cab had been parked on the south side of Grammont street, one and one-half blocks to the west; that a call had been received to go to the Alvis Hotel on De Siard street; that he was approaching Jackson street at a speed of not more than ten miles per hour and changed gears from high to second just before he reached Jackson street; that just as he entered the intersection he was making not over six or seven miles per hour; that he was four feet into the intersection when he first saw the Buick sedan about ten or fifteen feet away, traveling at the rate of forty or forty-five miles per hour; that he immediately applied his brakes and had come to a stop when the sedan, veering to the left, struck his left front fender and light with its right side. He says his car moved about two feet after he saw the Buick and applied his brakes and came to a complete stop.

It is the usual story. The driver of each car testifies that he was driving carefully, at a moderate rate of speed, and that the driver of the other car was driving in a negligent, reckless manner at a high and unlawful rate of speed. Counsel for the defendants well says in his brief that all these conflicting statements cannot be true. He suggests that the whole matter can be determined by an examination of the physics of the situation. It is the theory of the plaintiff that his car arrived at the immediate spot of the collision first and that it was struck by the Yellow Cab, coming from the west, while the defendants claim that the Yellow Cab reached this spot first and had come to a complete stop when plaintiff's car veered slightly to the east or left, struck the Yellow Cab on the left fender and headlight. If the two machines had been traveling at the same rate of speed, the driver of the Yellow Cab would have to be held negligent in either case, for the reason that Jackson street is a right of way street and the distance that each car had to travel before reaching the point of the collision would indicate that plaintiff's car entered the intersection first. Certainly, if the rates of speed of the two cars were approximately as was testified by the plaintiff's witnesses, then it is clear that the driver of the Yellow Cab was grossly negligent and all the blame is upon him. The driver of the plaintiff's car is corroborated in his testimony as to the rates of speed the cars were making by three occupants of the car and two disinterested eyewitnesses, strangers from Bastrop, La. They all agree that the Buick sedan was traveling at a moderate and lawful rate of speed and that the driver of the Yellow Cab did not stop for the intersection and was traveling at a reckless rate of speed, approximately forty-five miles per hour. It is true that Father J. C. Marsh, a witness for the defendants, testified that plaintiff's car was going thirty or thirty-five miles per hour, but, while we have the greatest respect for the Reverend Father and hold him in highest esteem, we cannot find that his estimate is correct. He states that at the time he was on the sidewalk talking to two of his parishioners, Messrs. F. X. Shaughnessy and L. H. Krogmire, and that his estimate of the speed was a mere guess, as he was not paying much attention to the car. He was standing close to where the collision occurred and could have seen it perfectly, but he says he did not see it. He

heard the crash and lifted his eyes, saw the rear end of the Buick car swerve to the east, and, quick as a flash, it turned over and rested in the position which has been described above. Mr. Shaughnessy was standing with his back to the scene of the accident. The crash of the collision caused him to turn quickly, and he observed the rear end of the Buick swerve to the left or east, just as Father Marsh had seen. The testimony of Mr. Krogmire is to the same effect. The driver of the Buick sedan testifies that as soon as he realized that a collision was imminent, he turned to the east or left in an effort to avoid it. The driver of the Yellow Cab corroborates him in this. So it must be accepted as true that in the fraction of a second that immediately preceded the collision, the Buick sedan was turned somewhat toward the left and the front of it was evidently further toward the east than was the rear. But when Father Marsh and his two companions lifted their eyes they saw the rear end of the car swerve to the east instead of the front pointing in that direction. This clearly indicates that the Buick must have been struck a powerful blow to swerve the rear end around to the left in spite of the fact that, just prior to that instant, the driver had pointed his front end to the left. It is the theory of the defendants that this swerving of the rear end of plaintiff's car to the left was caused by the driver running into the left front fender of the Yellow Cab with the right side of the Buick. But this argument will not hold. If the Yellow Cab had come to a full stop as is contended and plaintiff's car was going at a moderate rate of speed, as the driver says he was, this kind of collision would not have destroyed the Buick as was done. If the Buick had been going at the rate of speed claimed by the driver of the Yellow Cab, it would have certainly knocked the cab out of its position and would have proceeded south without turning over.

Taking the opposite view, if the Buick sedan were struck by the Yellow Cab while the Buick was going at a rapid rate of speed and while the cab was practically at a standstill, the result would have been negligible and the momentum of the Buick car would have been affected very little. It would have been impossible for it to have been wrecked as badly as it was and to have stopped and turned over at such a short distance from the point of collision. The fact that the rear end of the Buick did swerve to the left, in spite of the fact that the driver was attempting to turn the front of his car to the left, evidences the fact that the rear end had received a powerful blow from the right. A blow sufficient to produce this result must have come from an object having great momentum. This harmonizes perfectly with the testimony of all of the plaintiff's witnesses. They all testify that the Yellow Cab was coming at a rapid rate and that just before the collision they heard the screech of brakes applied. The driver of the Yellow Cab testifies that he had changed to second gear and then applied his brakes. Under those conditions there would have been no screeching of the brakes. Furthermore, if he had been going that slowly and carefully he could have gotten his car out of the difficulty instead of standing still and receiving the blow as he says he did.

It is earnestly argued by defendants' counsel that the fact that only the left front fender and headlight of the Yellow Cab were injured would indicate that the cab did not strike the Buick, but that the Buick sedan struck the Yellow Cab a glancing blow, as it (the Buick) was veering to the left. It is argued that if the Yellow Cab had struck the Buick, both fenders of the cab would have shown signs of the collision. The answer to that is, that at the moment of the collision, the front of the Buick was turned to the left or east and the Yellow Cab, coming straight from

the west, did not and would not strike it with both fenders. All Yellow Cabs are known to possess powerful brakes. When the driver of this cab suddenly discovered that he was about to strike plaintiff's car, he applied his brakes quickly so that, in spite of the momentum he had and retained until the moment of the impact, he stopped his machine immediately thereafter so that it proceeded no further.

In all automobile collisions at street intersections it is difficult to harmonize the testimony. In this case counsel for defendants argue earnestly that it is impossible for the results of the collision to be as they were under the testimony of the plaintiff's witnesses, and he seeks to prove this by the laws of physics. It must be remembered that physics is a very exact science, and in order to apply the laws of physics we must have exact data, a thing that is impossible in a case like this. The trial judge saw all the witnesses and heard them testify. He observed their manner and knew the interest or lack of interest of each. He concluded from the evidence that plaintiff's car was being driven at a moderate rate of speed on a right of way street, and that the Yellow Cab was traveling negligently on an intersecting street. We find no error in his conclusions. The preponderance of the testimony is in favor of the plaintiff, and the physical facts of the situation appear to us to be just as strong in his favor.

---

## QUANTUM OF DAMAGES

Plaintiff sued for $763.50. The lower court gave him judgment for only $400, and he appears in this court asking that the judgment be amended and raised to the amount originally prayed for. A great deal of testimony was introduced at the trial of the case, and it appears that the court had difficulty in arriving at the proper amount for which judgment should be rendered. In fact, the case was reopened in order to take further testimony on that point. When the case was reopened, testimony was introduced by the plaintiff which is to the effect that the sum of $432.10 will restore all parts of the injured car to the condition in which it was before the collision. The defendants offered some testimony which minimized the damage to a very great extent. Also some testimony was offered as to the value of the car before it was injured, and it was sought to make this value a standard by which to measure the damage caused by the collision. This court has held on numerous occasions that where one's automobile has been injured in a collision caused by the negligence of another he has a right to have every injured part restored to its former condition, even though the cost of replacing the parts may be out of proportion to the estimated value of the machine before the injury. The lower court gave judgment for $400 but there is nothing in the record to disclose what that estimate was based upon. The defendants offered some testimony which placed the estimated damage very low. We think that these estimates left out several things that need to be replaced. Plaintiff produced two witnesses at the first hearing who placed the damage at $763.50 and $660.90, respectively. But when the case was reopened, he placed other witnesses on the stand who say that the car can be repaired for $432.10. He is surely bound by this estimate and cannot contend for the higher figure. We think this last figure is as low as the court ought to fix the damage in view of the condition in which the car was immediately after the collision.

For the reasons assigned the judgment appealed from is amended so as to increase the amount awarded to the plaintiff from $400 to $432.10, and as thus amended it is affirmed, with all costs to be paid by the defendants.