[Civ. No. 13581.   First Dist., Div. One.   Apr. 13, 1948.]

E. F. ALBERTSWORTH et al., Respondents, v. GLENS FALLS INDEMNITY COMPANY (a Corporation), Appellant.

Thomas E. Davis for Appellant.

E. F. Albertsworth, in pro. per., and J. M. Atkinson for Respondents.

BRAY, J.—The principal question here is whether the liability of sureties on an attachment bond continues in whole or in part after the filing of a supersedeas bond on appeal.

On July 10, 1944, one Fruns commenced suit in the Superior Court of Santa Clara County against the Albertsworths (plaintiffs herein). That a writ of attachment might issue, defendant indemnity company filed an undertaking in the amount of $2,500, in the usual form, promising that if the attachment was discharged or the defendants therein recovered judgment, defendant indemnity company would pay all costs that might be awarded and all damages within the amount of the undertaking, which the Albertsworths might sustain by reason of the attachment. Because of the issuance of the writ and to prevent their property from being attached, the Albertsworths on July 11, 1944, deposited with the sheriff a cashier's check in the sum of $5,400.

Thereafter, the Albertsworths moved to dissolve the attachment. This motion was denied without prejudice. The Albertsworths again moved to dissolve the attachment, and on September 20, 1944, the motion was granted and the return of the deposited check ordered. From this order Fruns appealed, and filed an undertaking on appeal executed by the Fireman's Fund Indemnity Company, under the statutory obligations of section 946 of the Code of Civil Procedure. (This undertaking is hereafter referred to as the "appeal bond.") By reason of this undertaking and the appeal, the sheriff retained possession of the check. Later, after a trial, a decision on the merits of the action was rendered in favor of the Albertsworths, and Fruns appealed from the judgment. This appeal was consolidated with the appeal from the order dissolving the attachment. The District Court of Appeal affirmed both the judgment and the order. (*Fruns* v. *Albertsworth*, 71

Cal.App.2d 318 [162 P.2d 666].) Petitions for rehearing and for hearing by the Supreme Court were denied. The remittitur was filed in the superior court on December 27, 1945. On January 4, 1946, that court made its order for the return of the check. The sheriff, apparently in anticipation of the order, returned the check to the Albertsworths on January 3.

The Albertsworths then brought this action against defendant, the surety on the attachment bond. The trial court allowed plaintiffs, as damages, interest at 7 per cent per annum on the $5,400 deposited with the sheriff in the sum of $567, plus attorney's fees in the sum of $325, and costs in the sum of $50.62, which fees and costs it found were necessarily included in proceedings taken in all courts for the purpose of dissolving the attachment. Another item of interest allowed will be discussed later.

*Is Liability on the Attachment Bond Reduced or Terminated by the Appeal Bond?*

In its briefs, defendant takes the position that the appeal bond supersedes the attachment bond and terminates all liability thereon. On argument, it contended that the appeal bond either had that effect, or it limited the liability of the attachment bond sureties to damages incurred up to the time of the filing of the appeal bond only, and that while the sureties on the appeal bond are concurrently liable with them up to that time, the appeal bond sureties are solely liable from then on.

The question of the effect on the liability of the attachment bond sureties by the filing of an appeal bond has never been flatly passed on in California. The nearest our courts have come to the subject is in the four cases hereinafter mentioned. The first is *Ayres* v. *Burr*, 132 Cal. 125 [64 P. 120], where an action was brought against the sheriff for refusing to serve a second writ of attachment because of the filing of a bond to prevent the service of the first writ of attachment. It was the plaintiff's contention that as an appeal bond had later been filed, the lien of the attachment ended, and he was entitled to reattach the property under a new writ of attachment issued upon the filing of a new attachment bond. The court held that in spite of the filing of the appeal bond the bond for release of attachment was still in effect, and said (p. 129): "We think that the bond given to prevent the attachment was not destroyed or affected by the appeal. This bond was not given alone as personal protection to the sheriff, but was given for the benefit of the parties to the action,—as to the

defendant Thomas, to protect his property from attachment; and as to the plaintiff, as security for the payment of the judgment that might be finally rendered in the case. Pending the appeal, it could not be enforced, but we cannot see that because the statute provides that execution is stayed on the judgment, and that certain mentioned liens existing at the time the appeal is taken cease, it must follow that the bond given to prevent attachment should be disturbed; certainly, the statute does not so provide, and we cannot add to its terms.''

The second case is *Primm* v. *Superior Court*, 3 Cal.App 208 [84 P. 786], which holds that an attachment is not finally and irrevocably dissolved the moment a judgment for defendant is entered. Section 553 of the Code of Civil Procedure provides that in the event of such judgment, the property attached must be returned to defendant. But construing that section with the appeal bond section, the court states that the sections must ''be harmonized and made operative as parts of one general law'' and that ''A fair, reasonable, unstrained construction leads to the conclusion that the dissolvent force of a judgment is neutralized by a perfected appeal, provided the additional undertaking is filed and the appeal perfected within the specified time. This construction gives harmonious effect to both sections and does not nullify any part of either.'' (P. 212.)

In the third case there is language to the effect that the lien of an attachment ends with entry of judgment in favor of the defendant, whose property is attached, the liability on the attachment bond also terminates, and that the liability of the sureties on the appeal bond does not include the damages accrued prior to the filing of that bond. This case is *Heine* v. *Wright*, 76 Cal.App. 338 [244 P. 955], where the appellate court upheld judgments of the trial court which awarded damages against the sureties on an attachment bond up to the time of judgment in the original action and against the sureties on an appeal bond from the time of the appeal on. However, an examination of the opinion shows that the question of successive liability or total liability was not presented to the court, as the successful party elected to sue each surety in a separate action. Apparently, the court and the parties assumed without question that the rule applied was the rule of liability. The main point presented and passed on was whether the persons attached had consented to and requested the attachment. The statement that the lien of the attachment

ends with the judgment and the attachment sureties' liability terminates there is contrary to the weight of authority. No case is cited to support the proposition, nor does the court consider the Primm case, *supra*. Moreover, it is agreed in the case at bar that, contrary to the holding in the Heine case, the liability of the appeal bond sureties is not limited to damages accruing subsequent to the filing of the appeal bond but includes *all* damages which the defendant may sustain by reason of the attachment, including those accrued at the time of filing the bond.

The fourth case is *King* v. *Hartford Acc. & Ind. Co.*, 133 Cal.App. 711 [24 P.2d 906]. There, the sureties on an appeal bond paid the amount of the judgment from which the appeal had been made unsuccessfully. They then sued the sureties on a bond given early in the proceedings to procure a release of an attachment, to recover the amount they had paid. The appellate court reversed a judgment of the lower court permitting the sureties on the appeal bond to recover from the surety on the release of the attachment bond. The case establishes three rules on the subject: (1) That the second (appeal) and first (release of attachment) sureties are not cosureties, and, therefore, there is no right to contribution from the first where the second pays; (2) That there is no right to relief under the equitable doctrine of subrogation, or recovery by the second against the first where the former pays, in the absence of "special circumstances which operate to render the equities of the later surety superior to those of the earlier"; (3) That if the first pays he will recover by subrogation from the second.

While the third holding in that case is probably dictum, it is based upon the prevailing rule elsewhere. The opinion quotes the following from Stearns on Suretyship, 2d edition, section 254: "The execution of a suretyship obligation in the course of a legal proceeding for the collection of a debt for which another is already bound as a surety, or where bonds are given in the prosecution of legal remedies in the appellate courts in which successive undertakings are required, generally results in placing the ultimate liability upon the last surety, through whose agency the litigation has been prolonged, and while as between such surety and the creditor he may be properly termed a surety for the prior promisor, yet if his contract is solely in the interest of the principal, and without the assent of the prior surety, he is regarded as debtor of all the prior parties, and not entitled to subrogation to the remedies of the

creditor against the prior sureties; *but on the contrary if the prior surety pays he will recover by subrogation from the later surety . . .*" (Emphasis added.)

The case of *Associated Constructors* v. *Paonessa,* 13 Cal.2d 241 [88 P.2d 924], relied on by defendant, is not in point. There an appellant filed an appeal bond, but when the adverse party excepted to the sureties on the bond the sureties could not qualify. Thereupon, the appellant filed a new bond with sureties who did qualify. In an appeal from a summary judgment against the sureties who did not qualify, the court held that there was no liability at all on their part and that the second bond had completely superseded the first. It is obvious that where the sureties fail to justify there is no bond at all, and that such is the effect of section 948 of the Code of Civil Procedure which provides that unless the sureties justify when required, the execution to stay which the bond is given is no longer stayed.

Defendant calls attention to section 946 of the Code of Civil Procedure which provides: "An appeal does not continue in force an attachment, unless an undertaking be executed and filed on the part of the appellant by at least two sureties, in double the amount of the debt claimed by him, that the appellant will pay all costs and damages which the respondent may sustain by reason of the attachment"; and also to the fact that under section 539 of the Code of Civil Procedure the attachment bond need be only in an amount not less than $50 or more than the amount claimed in the complaint; and argues that because of the language in the former section requiring a bond in double the amount of the debt in order to keep the attachment in force, the Legislature intended that the appeal bond be in lieu of the original attachment bond.

Defendant asks that we follow the rule in Massachusetts as stated in *Russia Cement Co.* v. *Le Page Co.* (1899), 174 Mass. 349 [55 N.E. 70], which holds that the rule in that state is that the appeal bond is a substitute for the attachment bond. That, however, is the minority rule, and as pointed out in that case, is not the federal rule which holds that the bonds are supplemental to each other.

While section 946 makes no provision for taking into consideration, in determining the amount of the bond on appeal, the amount or value of the attachment bond, and requires an amount double the amount of the debt claimed, we cannot say that the Legislature, by the language used, meant

to indicate any intent that the appeal bond is to supersede the attachment bond. The more reasonable interpretation is that the failure to make any reference to the effect of the appeal undertaking on prior undertakings indicates an intention to make the later undertaking additional to the prior undertaking, and to give the person whose property is attached this added protection. As held in *Chrisman* v. *Jones,* 34 Ark. 73, proceedings on appeal are *in invitum* against the successful party and therefore it is not just that the filing of the appeal bond should deprive him of any of his securities. Particularly is this so, when the attachment bond sureties have the right of contribution against the appeal bond sureties. Although it is a somewhat anomalous situation that if no appeal bond is filed, the attachment ends, and the liability of the attachment bond sureties continues no further, but if an appeal bond is filed, that liability continues on until the final determination of the case, still this continuing liability remains because the attachment which the first bond sureties brought into being, itself continues on.

Defendant quotes from 50 Corpus Juris 281 as follows: "Sureties on successive bonds for the same obligation are cosureties if the bonds remain in force and are merely cumulative, but not where the latter bond supersedes the former, and the liability of the surety on the first bond terminates as to the future when the second is given. Sureties on different bonds given in successive steps in litigation are not cosureties, as in the case of sureties on a bond to pay a judgment and sureties for the original debt." However, such rule is based on the assumption that the latter bond *supersedes* the former, which is the question to be determined here. But, as set forth in 50 Corpus Juris 315, in the case of "successive sets of sureties on different bonds given in judicial proceedings" the rule is different and the sureties on the first bond are supplemental to those on the succeeding bonds. 4 Corpus Juris 1289 states: "An appeal bond does not supersede a redelivery bond given to dissolve an attachment in the same action, but the party executing them is liable on both." (See also 5 C.J.S., p. 1603.)

In *Chrisman* v. *Rogers,* 30 Ark. 351, the successful plaintiff in the original action sued the sureties on a bond to discharge an attachment issued in that action, and it was held that he could recover his damage from those sureties, notwithstanding the fact that an appeal bond had been filed. The court stated that "the plaintiff most clearly had his

election of remedy to sue out execution upon his judgment or to sue upon the attachment bond." (P. 355.) In a later suit (*Chrisman* v. *Jones, supra* [34 Ark. 73]), one of the sureties on the bond to discharge the attachment who had been forced to pay the judgment in the foregoing case sued the sureties on the appeal bond, for contribution. The court held: "It is the law of this case . . . that the complainant was not discharged from his liability on the attachment release bond, by the execution of the appeal bond. The creditor had the option to pursue his rights upon either security." (P. 75.) In allowing recovery from the sureties on the appeal bond it was said: "The principle in equity seems to be well established, that when successive securities for debt have been given in judicial proceedings upon the request of the debtor alone, to enable him to prolong the litigation, whilst all will be liable directly to the creditor, they will be, as amongst themselves, liable to exoneration in the inverse order of their undertakings." (P. 77.) To the same effect see *Day* v. *McPhee* (1907), 41 Colo. 467 [93 P. 670]. While in these cases the first bond was one to release attachment, it is obvious that so far as the question here presented is concerned, there can be no difference in the rule applying to a bond to release an attachment than to a bond to obtain an attachment. The rule is well stated in Restatement of the Law, Security, section 192, page 530: "Where two bonds with different sureties are given in the course of the same litigation and one or both are appeal bonds, and the case is finally determined against the appellant, (a) each surety is liable to the appellee according to the terms of his undertaking; (b) as between themselves to the extent to which they secure the same duty of the appellant, (i) the second surety is the principal surety if the first surety has not concurred in the obtaining of the subsequent bond; . . ." (To the same effect, 50 C.J. 315; Stearns Law of Suretyship, (4th ed.), p. 364.)

Neither counsel nor we have been able to find any case in any jurisdiction other than *Heine* v. *Wright, supra*, supporting the rule contended for at argument, namely, that the attachment bond sureties be held liable for all damages accruing to the time of the filing of the appeal bond and that the appeal bond be held to be supplemental to the attachment bond up to the time of filing the appeal bond, and from then on, be considered the sole bond. Such a rule would do violence to the language of section 539, under

which the sureties undertake to pay *all* damages which a defendant may sustain by reason of the attachment. While, to some extent, the federal and majority rule is based upon the form of the statutes in the particular jurisdiction, we find nothing in our statutes to compel us to adopt any other rule, especially as that rule appears to be the better rule.

## Attorney's Fees

Defendant makes no contention that plaintiffs are not entitled to an allowance for attorney's fees incurred in all proceedings in all courts to obtain a dissolution of the attachment. It contends, however, that the allowance was too high. The court allowed for this purpose half of all attorney's fees incurred by plaintiffs in the trial and appellate courts. Plaintiffs' attorney testified that about a tenth of his services was devoted exclusively towards the dissolution of the attachment up to the time of its dissolution by the trial court on September 20, 1944, and that the percentage of time devoted exclusively to matters connected with the dissolution of the attachment through all courts was from one-third to one-half. Defendant contends that, at most, the court should not have allowed more than one-third, as plaintiffs are limited to the lowest figure mentioned by him. In support of this contention it cites *Soule* v. *United States F. & G. Co.*, 82 Cal.App. 572 [255 P. 886], and 7 C.J.S. 684, 685. These authorities do not discuss the amount of fees but only the general rule that the fees to be allowed are limited to those reasonably incurred in procuring a dissolution of the attachment. The other case cited on this point, *McClary* v. *Endom's Transfer & Storage Garage*, 19 La.App. 515 [139 So. 702], was a case in which the court held that in a suit for recovery of damages to an automobile where several witnesses testified for plaintiff giving varying estimates of damage, plaintiff was bound by the testimony of the witness giving the lowest estimate, and could recover no more than that estimate. That case is not authority for the contention that where an attorney estimates the time he has spent in obtaining a dissolution of the attachment as one-third to one-half of the time spent on the entire case, the court must necessarily accept the lower figure.

The sole question for us to determine is whether there is any substantial evidence to support the court's finding. While the court could have taken one-third as the basis, we cannot say as a matter of law that the judge, who was the same one

before whom all proceedings in the trial court were had, with his personal knowledge of the services rendered in the trial court and his ability to evaluate them as well as those rendered in the appellate court, erred in taking the higher figure. As said in *Mason* v. *United States Fid. & Guar. Co.*, 60 Cal.App.2d 587, at p. 594 [141 P.2d 475]: ". . . it should be kept in mind that the judge who tried this cause was the same judge who presided at the hearing of June 3, 1940. The trial judge knew how much of the argument that day was devoted to the point relating to the dissolution of the restraining order and how much was devoted to other matters. As a lawyer he was able to evaluate the worth of those services. It is well settled that when a judge is informed of the extent and nature of legal services, he can determine what is a reasonable fee from his own knowledge and experience without the necessity of other evidence. (See cases collected 3 Cal.Jur., p. 714, § 111.)"

### Interest

The court allowed interest on the $5,400 from July 10, 1944, to January 4, 1946, in the sum of $567. It is conceded that that is an erroneous computation and that the correct figure for that period is $560.70. There is another error in that the correct date upon which the sheriff received the check is July 11, 1944, and the date upon which he returned it is January 3, 1946. Thus, there is an allowance of two days interest too much. This amounts to $2.10, which would make the correct amount of interest $558.60, reducing the total amount of the judgment from $942.62 to $934.22.

The court allowed interest on the total amount of damages from January 4, 1946, the date it assumed the check was returned, to March 31, 1947, the date of the judgment. Inasmuch as the claim for attorney's fees and costs was unliquidated until the time of the judgment, interest should not have been allowed on that portion of the total sum representing the allowance for attorney's fees and costs. The amount and value of the attorney's fees could only have been established by evidence in court, and therefore plaintiffs are not entitled to interest prior to judgment. (*Johnson* v. *Marr*, 8 Cal.App.2d 312 [47 P.2d 489].) As said in *Samuels* v. *Singer*, 1 Cal.App. 2d 545, 555 [36 P.2d 1098]: ". . . in such cases interest is not allowable upon the theory that the person liable does not know of the sum he owes, and therefore can be in no default for not paying."

■ That portion of the damages representing interest on the $5,400 comes within the terms of section 3287 of the Civil Code: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

In *Petersen* v. *Lyders*, 139 Cal.App 307 [33 P.2d 1032], the plaintiffs did not know at the time they filed their complaint the exact amount for which defendant was indebted to them; yet this fact alone was held not to render the claim unliquidated so as to preclude interest. The court stated (p. 309): "Defendant had the use of money collected for the use and benefit of plaintiffs and belonging to them, and it would be unjust and inequitable not to charge him with interest from the time the actions were brought. The correct amounts due were easily arrived at by allowing defendant certain credits, the amounts of which were at all times within his own knowledge. The claim of plaintiffs was certain, or capable of being made certain, by calculations within the meaning of section 3287 of the Civil Code." See also *County of Imperial* v. *Adams*, 117 Cal.App. 220 [3 P.2d 953].

Approximately seven days intervened between the date of filing the remittitur in the superior court and the date of receiving the check from the sheriff. Defendant contends that interest should not be allowed for those seven days. Plaintiffs state that it was necessary to obtain an order of release by the superior court before the sheriff would return the check. This order was obtained on January 4. Although the sheriff apparently did not wait for this order, as he returned the check on January 3, the delay of one week is not unreasonable.

The findings of fact, conclusions of law, and the judgment are amended to provide that plaintiffs have judgment against defendant in the sum of $934.22, together with interest on the sum of $558.60 at the rate of 7 per cent per annum from January 3, 1946, to March 31, 1947, amounting to the sum of $48.55, making a total judgment in the sum of $982.77. As so amended, the judgment is affirmed, respondents to recover costs on appeal.

Peters, P. J., and Ward, J., concurred.