[Civ. No. 29296. Second Dist., Div. Three. May 24, 1967.]

SCOTT, BLAKE & WYNNE, Plaintiff and Respondent, v. SUMMIT RIDGE ESTATES, INC., et al., Defendants and Appellants.

348

Flynn & Rafferty and Owen P. Rafferty for Defendants and Appellants.

Erb, Picone & Calaway for Plaintiff and Respondent.

MOSS, J.—Defendants appeal from a judgment decreeing the foreclosure of plaintiff's mechanic's lien for surveying and engineering services rendered in connection with the subdivision of Tract 23198.

Defendants contend that plaintiff's mechanic's lien is void because (1) the contract under which plaintiff performed its services was not a direct contract with the owner and therefore plaintiff's failure to give the notice of lien required by section 1193 of the Code of Civil Procedure[1] rendered its claim of lien invalid; (2) a portion of the services included in plaintiff's claim of lien was rendered for the benefit of land which was not a part of Tract 23198 and some of the improvements designed by plaintiff were not used in the tract; (3) plaintiff's claim of lien was not timely filed by reason of notices of completion filed by defendants; and (4) the award of fees to plaintiff's attorney was excessive.

On August 1, 1959, plaintiff, a licensed land surveyor and civil engineer, entered into a written contract with defendant Summit Ridge Estates, Inc. ("Summit Ridge"), designated in the contract as "developer," to render surveying and engineering services pertinent to the development of Tract 23198 located in the City of Los Angeles. At that time Tract 23198 existed only as a number assigned by a governmental agency to a proposed new residential subdivision. Summit Ridge then owned Lot 12 of Tract 7996 consisting of a seven-acre parcel of mountainous terrain. This seven-acre parcel with certain peripheral changes hereafter noted became Tract 23198 consisting of 19 residential building sites. The official tract map, prepared by plaintiff, was recorded on September 16, 1960. Originally Summit Ridge contemplated only 12 residential lots in the subdivision, but due to minor extensions of the boundaries of the tract made possible by new acquisitions and redesigns developed by plaintiff, Summit Ridge was able

---

[1]All references are to the Code of Civil Procedure unless otherwise specified.

to create 19 building sites instead of the contemplated 12 sites. The changes in the original boundary of Lot 12, Tract 7996 consisted primarily of drainage easements, storm easements, sewer easements to and from the tract, grading slope easements to protect the roadway into the tract, and certain fee acquisitions which were made as the result of a slight realignment of the entry road to prevent slippage and slides, and to eliminate loose surface and fill materials. Certain areas of Lot 12, Tract 7996 were excluded from Tract 23198 because their inclusion would not have increased the number or value of the 19 lots into which the tract was ultimately subdivided. Some of these acquisitions were not made of record until after the recording of Tract 23198. The record owners of the acquisition parcels joined in the recorded tract map and later executed conveyances thereof to the defendants.

B.J.K. Development Co., Inc. ("BJK") and La Trobe Construction Company ("La Trobe") were joined as defendants. The general manager of the development during the period commencing before the date of plaintiff's contract with Summit Ridge until after the filing of this action was Earl Kaldenberg, who was also the secretary-treasurer of both Summit Ridge and BJK. Plaintiff dealt primarily with Kaldenberg throughout. BJK and Summit Ridge were joint venturers in the development of Tract 23198. La Trobe supplied the money for the development and prior to March 23, 1961, held an unrecorded deed of trust on the tract as security for its loan. Summit Ridge conveyed Tract 23198 to La Trobe by deed recorded on March 23, 1961 and La Trobe in turn conveyed the tract to BJK by deed recorded August 23, 1961. Summit Ridge transferred title to La Trobe only after La Trobe threatened to record its deed of trust and foreclose it. When BJK was able to obtain financing from lending institutions, La Trobe transferred title to BJK.

Under the contract Summit Ridge agreed to pay plaintiff at designated rates. Plaintiff's total charges were $53,410.27 of which it was paid $36,436.19 leaving a balance due of $16,974.08. Defendants caused to be recorded notices of completion of specific aspects of the work on January 5, 1961, and February 21, 1961, respectively. Plaintiff performed services until March 31, 1961. Plaintiff filed its claim of lien on May 5, 1961, and commenced this action on July 27, 1961. It did not file a notice of lien pursuant to section 1193. No notice of nonresponsibility was given pursuant to section 1183.1 by de-

fendants or any other owner of the property which ultimately became part of Tract 23198.

Defendants contend that the contract of August 1, 1959, was not a ''direct contract with the owner'' as that term is used in section 1193 and that therefore the failure of plaintiff to give the notice specified in section 1193 invalidates its lien. In support of this contention they point out that on the date of the contract Summit Ridge did not own all of the land that ultimately was included in Tract 23198 and that on May 5, 1961, when plaintiff recorded its claim of lien, Tract 23198 was owned of record not by Summit Ridge but by La Trobe and Margaret E. Rabinowitz.

The pertinent portion of section 1193 provides that ''(a) Except one under direct contract with the owner or one performing actual labor for wages, every person who furnishes labor, service, equipment or material for which a lien otherwise can be claimed under this chapter, must, as a necessary prerequisite to the validity of any claim of lien subsequently filed, cause to be given not later than 15 days prior to the filing of a claim of lien a written notice as prescribed by this section, to the owner or reputed owner and to the original contractor.''

An owner may be estopped, however, to assert that a claim is invalid because the claimant failed to give him the prior notice required by section 1193. Where a noncontracting owner has actual knowledge of the improvements being made to his property and fails to avail himself of the mode of exempting his interest from liability for the work provided by section 1183.1, subdivision (b),[2] he is estopped to deny that the work was done at his instance and request. (*Halspar, Inc.* v. *La Barthe,* 238 Cal.App.2d 897 [48 Cal. Rptr. 293], hrg. denied Feb. 16, 1966.) Under such circumstances the claimant has a ''direct contract with the owner'' for the purposes of section 1193 and consequently is not required to give the notice prescribed therein. (*Halspar, Inc.* v. *La Barthe, supra,* 238 Cal.App.2d 897, 899-900; *Benson Elec. Co.* v. *Hale Bros. Assoc. Inc.,* 246 Cal.App.2d 686, 693 [55

[2]The pertinent portion of section 1183.1, subdivision (b) provides that every improvement constructed with the knowledge of the owner shall be held to have been constructed at the instance of the owner subject to any lien filed in accordance with the provisions of the mechanic's lien statute unless the owner shall give the statutory notice of nonresponsibility within 10 days after he has obtained knowledge of the improvement.

Cal.Rptr. 73].) "This result is entirely logical as . . . the owner is already in possession of the type of information otherwise provided by the prelien notice of section 1193." (*Halspar, Inc.* v. *La Barthe, supra,* at p. 900.)

Defendants contend that the reasoning of the *Halspar* case does not make sense in the light of section 1193, subdivision (b), which provides: "Any agreement made or entered into by an owner whereby the owner agrees to waive the rights or privileges conferred upon him by this section shall be void and of no effect." Defendants say that an owner, before entering into such an agreement, would necessarily have actual knowledge of work being done and that such knowledge has the effect of a waiver of the prelien notice under *Halspar* contrary to the prohibition contained in section 1193, subdivision (b). This argument ignores the difference between waiver and estoppel. ■ The knowledge of the owner referred to in section 1183.1, subdivision (b), is knowledge of actual construction, not intended construction. (*Arthur B. Siri, Inc.* v. *Bridges,* 189 Cal.App.2d 599, 601 [11 Cal.Rptr. 322].) The basis of section 1183.1, subdivision (b), is estoppel. (*Halspar, Inc.* v. *La Barthe, supra,* 238 Cal.App.2d 897, 899.)

■ Section 1193, subdivision (b), invalidates a waiver of the right to prelien notice by agreement before construction of the work covered by the agreement commences. ■ Section 1183.1, subdivision (b), estops an owner from disclaiming responsibility for work performed on his land with his actual knowledge unless he files a notice of nonresponsibility.

■ The reasoning of *Halspar* applies to this case provided that the owners of the land which was included in Tract 23198 had actual knowledge of the work done by plaintiff. The evidence is undisputed that they did. Defendant Summit Ridge, the record owner of most of the land that became Tract 23198, made the contract with plaintiff. ■ The court found that defendant BJK was a joint venturer with Summit Ridge to develop the tract. Therefore BJK was charged with the knowledge of Summit Ridge. (Civ. Code, § 2332.) Furthermore, since the general manager of the development, Earl Kaldenberg, was an officer of BJK as well as Summit Ridge, his actual knowledge was chargeable to BJK. (*Snyder* v. *Security First Nat. Bank,* 31 Cal.App.2d 660, 664 [88 P.2d 760]; 1 Witkin, Summary Cal. Law (1960) Agency, § 55, p. 431.)

■ The court found that defendant La Trobe financed the development. There is uncontradicted evidence that one of La

Trobe's officers and directors, Mr. Ferrari, personally invested in the tract and followed the progress of the work. Furthermore, there is ample evidence to support the finding that the title to the tract which La Trobe held of record from March 23, 1961, to August 23, 1961, was for security only, and, therefore, whether or not La Trobe had notice of plaintiff's work its interest was subordinate to plaintiff's lien under the provisions of section 1189.1, subdivision (b).[3]

▮ There is evidence that Margaret Rabinowitz had actual knowledge of the work done by plaintiff in preparing the subdivision in that she signed the subdivision map which showed on its face that it had been prepared by plaintiff. However, the court did not expressly so find nor did it make any finding from which her knowledge can be implied. Defendants may not complain of this omission, however, since it is apparent from the fact that she participated in the recording of the subdivision map that she had knowledge of plaintiff's services and that had an express finding been made on that issue it would have been adverse to defendants. (See *Pry Corp. of America* v. *Leach*, 177 Cal.App.2d 632, 637 [2 Cal. Rptr. 425].)

▮ Defendants urge that the trial court made no express determination of the issue of whether plaintiff's failure to give the prelien notice under section 1193 invalidates its lien, and that therefore no inference of fact in plaintiff's favor on this issue may be made because defendants requested special findings on the issue pursuant to section 634. We agree that the trial court's express finding on the issue was in reality a conclusion of law.[4] However, defendant's requested findings did not reach the issue either[5] since they were directed to the

_____

[3]Section 1189.1, subd. (b) provides in part: "The liens provided for in Section 1184.1 are preferred to (1) any mortgage, deed of trust, or other encumbrance which may have attached subsequent to the time when the work of improvement of the character referred to in that section in connection with which the lien claimant has done his work or furnished his materials was commenced; or to (2) any mortgage, deed of trust, or other encumbrance of which the lien claimant had no notice and which was unrecorded at the time when such work of improvement was commenced; or to (3) any mortgage, deed of trust, or other encumbrance recorded before the commencement of the work of improvement of the character referred to in that section which was given for the sole or primary purpose of financing such work of improvement . . ."

[4]The court found, "that no fifteen day advance written notice as required by California Code of Civil Procedure, Section 1193 was necessary."

[5]"1. Was the contract dated August 1, 1959, a direct contract with

issue of whether or not the contract was "a direct contract with the owner" rather than the issue of whether the owners had actual knowledge of plaintiff's work.

 Portions of Lot 12 Tract 7996, the parcel originally owned by Summit Ridge, were excluded from Tract 23198 because their inclusion would have added no economic benefit to the subdivision. Defendants contend that plaintiff's lien may not properly include compensation for work done on these excluded parcels. Section 1184.1[6] allows a lien to "[a]ny person who, at the instance or request of the owner . . . of any lot or tract of land, grades, fills in, or otherwise improves the same. . . ." The word "improves" as used in section 1184.1 refers to the improvement of the tract upon which the lien is given (*Warren* v. *Hopkins*, 110 Cal. 506, 510 [42 P. 986] [interpreting a predecessor section to section 1184.1]) and includes the engineering services necessary to subdivide the property into residential lots. (*Nolte* v. *Smith*, 189 Cal.App.2d 140 [11 Cal.Rptr. 261, 87 A.L.R.2d 996].)

 The trial court found that "any and all work, services and material furnished on real property outside the physical boundaries of Tract 23198 were necessary and for the direct benefit" of the tract. This being so, plaintiff was entitled to a lien for its services on Tract 23198 even though those services may also have benefited the surrounding land.

 Defendants contend that the amount of the judgment ordering foreclosure of plaintiff's mechanic's lien improperly included compensation for work performed by plaintiff which was not delivered to defendants and which was not used or consumed in the work of improvement. This contention was asserted in defendants' answer and pretrial statement of factual contentions. The trial court found that "none of the allegations or demands of the Answer and Counterclaim or defendants separate legal and factual contentions is true." This finding was sufficient. (See Witkin, Cal. Procedure

the owner? 2. Was the contract dated August 1, 1959, ambiguous or uncertain insofar as the designation of Summit Ridge Estates, Inc., as being a developer, rather than the owner, is concerned?"

[6]Section 1184.1 provides: "Any person who, at the instance or request of the owner (or any other person acting by his authority or under him, as contractor or otherwise) of any lot or tract of land, grades, fills in, or otherwise improves the same, or the street, highway, or sidewalk in front of or adjoining the same, or constructs or installs sewers or other public utilities therein, or constructs any areas, or vaults, or cellars, or rooms, under said sidewalks, or makes any improvements in connection therewith, has a lien upon said lot or tract of land for his work done and materials furnished."

(1954) Trial, § 114, p. 1846.) Since the evidence was in conflict as to whether all the work for which plaintiff sought to foreclose its lien was beneficial to the tract, and since there was substantial evidence to support the last quoted finding of the trial court, we are bound by it.

Defendants contend that plaintiff's claim of lien was not timely filed insofar as it pertains to work performed by plaintiff in connection with the sewers, storm drains, underground utilities and street in the tract because defendant filed notices of completion as to this work on January 5, 1961, and February 21, 1961. Section 1193.1, subdivision (c), provides that an original contractor shall have 90 days after completion of the "work of improvement" within which to file for record his claim of lien. However, if the owner shall "within 10 days after the completion of the work of improvement file for record a notice of completion" an original contractor must file his claim of lien within 60 days after the date of filing of the notice of completion. One who contracts directly with the owner is an original contractor. (*Pacific Mut. Life Ins. Co.* v. *Fisher,* 106 Cal. 224, 232 [39 P. 758].) A notice of completion filed by the owner before actual completion of the work of improvement is premature and does not limit the time within which claims of lien must be filed. (*Otis Elevator Co.* v. *Brainerd,* 10 Cal.App. 229, 232 [101 P. 691].) Plaintiff, having contracted with the owner was an "original contractor" as that term is used in the statute. The trial court found that plaintiff did not complete its services under the contract until March 31, 1961. The determination of the date of completion of a work of improvement is a question of fact. (*Mott* v. *Wright,* 43 Cal.App. 21, 26 [184 P. 517].) Since there was a conflict in the evidence on this issue the finding of the trial court must be sustained.

Plaintiff's claim of lien was filed of record on May 5, 1961, within 90 days after the completion of the work of improvement, and therefore was timely filed unless the notices of completion filed by defendants shortened that time. The notices of completion did not have that effect because they were filed before the work of improvement was completed. "Work of improvement" as used in section 1193.1 means "the scheme of improvement as a whole." (§ 1182, subd. (b).) The scheme of improvement in this case was a land subdivision. Plaintiff's services were basic to the "scheme of improvement" (*Nolte* v. *Smith, supra,* 189 Cal.App.2d 140, 147) and there-

fore the work of improvement was not completed until plaintiff had completed its services under the contract.

Provision is made in the statute by section 1193.1, subdivision (b), whereby an owner can obtain the benefit of filing a notice of completion as to a portion of the work of improvement, as defendants have attempted to do here, but only where the work of improvement is made pursuant to two or more original contracts each covering a particular portion of the improvement. In such a case if the owner files a notice of completion covering such particular portion of the work, ''the original contractor under the contract covered by such notice'' must file his claim of lien within 60 days thereafter. The notices of lien filed by defendants on January 5, 1961, and February 21, 1961, did not cover the contract between defendants and plaintiff, but covered work performed by other contractors under contracts to which plaintiff was not a party. Therefore, for this reason as well, the notices of completion did not shorten the time within which plaintiff was permitted to file its claim of lien under section 1193.1, subdivision (b).

Defendants' final contention is that the trial court abused its discretion in fixing attorney fees recoverable by plaintiff in the amount of $4,000 instead of the sum of $1,290 which would have been the fee had the court applied the schedule in rule 12 section 1(b) of the Rules of the Superior Court of Los Angeles County. Defendants maintain that the trial court was bound by the schedule because plaintiff's counsel did not present to the court an itemized statement of services rendered. ''It is well settled that when a judge is informed of the extent and nature of legal services, he can determine what is a reasonable fee from his own knowledge and experience without the necessity of other evidence.'' (*Albertsworth* v. *Glen Falls Indem. Co.*, 84 Cal.App.2d 816, 825 [192 P.2d 66].) This case was tried without a jury before the judge who fixed the fee. The trial took eleven days. No showing has been made that the amount of attorney fees awarded was unreasonable.

The judgment is affirmed.

Ford, P. J., and Cobey, J. concurred.