Filed 2/18/16

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PICERNE CONSTRUCTION CORP., | C071197 |
| Plaintiff and Respondent, | (Super. Ct. No. 06AS05561) |
| v. | |
| CASTELLINO VILLAS et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Judy Holzer Hersher, Judge. Affirmed as modified.

Levy, Small & Lallas, Tom Lallas, John P. Mertens, and Mark D. Hurwitz for Defendant and Appellant Castellino Villas.

Bryan Cave, Rimon PC and Richard J. Mooney for Defendant and Appellant Bank of the West.

Sheppard, Mullin, Richter & Hampton, Scott E. Hennigh, Meredith A. Jones-McKeown, and Scott A. Vignos for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II, IV, and V.

1

Picerne Construction Corp. (Picerne) agreed to build an apartment complex for Castellino Villas, a K.F. LLC (Castellino). After construction started, Castellino refinanced the property, replacing the original lender with Bank of the West. Picerne subsequently claimed money due, recorded a mechanic's lien, and brought this action against Castellino and Bank of the West to foreclose on the lien. Following a bench trial, the trial court entered judgment in favor of Picerne.

Castellino now contends: (1) Picerne does not have a valid mechanic's lien because it did not record its claim within 90 days after substantial completion of the project; (2) the doctrine of judicial estoppel prevents Picerne from taking contrary positions at arbitration and at trial; (3) Picerne did not timely record a claim of mechanic's lien as to nine distinct buildings within the project; and (4) the trial court erred in calculating the amount of the lien.

Bank of the West agrees that Picerne failed to timely record its claim of mechanic's lien. In addition, Bank of the West contends (5) that Picerne's complaint against it is time-barred because Picerne did not name Bank of the West as a defendant in the original complaint even though it was aware of facts indicating it had a claim against the bank.

We conclude (1) Picerne timely recorded its mechanic's lien; (2) Castellino fails to demonstrate the applicability of judicial estoppel; (3) the property constituted one residential unit; (4) the trial court overstated the principal sum due and failed to subtract the $115,453.50 setoff from the principal sum, but the other claims of error with regard to the lien amount have no merit; and (5) the action against Bank of the West is not time-barred because Picerne timely substituted Bank of the West in place of a Doe defendant when Picerne learned of the bank's interest in the property.

We will modify the judgment to provide that the mechanic's lien is in the amount of $2,416,855.06 and affirm the judgment as modified.

2

BACKGROUND

Castellino and Picerne entered into an agreement in which Picerne would build an apartment complex called Castellino Villas at Laguna West (project or property) in the City of Elk Grove (the City). The project consisted of 11 apartment buildings, separate garages, a clubhouse, and other facilities.

Erich Kopple and John Olsen were the owner's representatives for the project. Aaron Schein was in charge of the project for Picerne. Picerne employee Scott Wiggins was the assistant superintendent.

The City issued certificates of occupancy for the 11 buildings within the project in 2006, after a city inspector conducted a final inspection of each building. The first certificates of occupancy were issued on May 3, 2006. The final certificate of occupancy was issued on July 25, 2006. Castellino did not release the project retention proceeds, which was 10 percent of each progress payment, to Picerne when the City issued the certificates of occupancy.

Picerne employees and subcontractors continued to perform work at the project after July 25, 2006, and after Picerne removed its trailer from the jobsite. Superintendent's daily job reports maintained by Picerne employees showed that work was performed at the project after July 25, 2006. Wiggins worked at the project the entire month of August 2006.

Olsen signed a document accepting building numbers 1, 3, 4, and 6 through 11 for Castellino on August 28, 2006. At that time, Wiggins created a punch list of work still to be completed. The punch list included work within the original scope of Picerne's contract with Castellino, such as the installation of grip tape on stair treads. The plans for the project called for the installation of "contrasting color warning stripe" on all concrete stair treads. "Contrasting color warning stripe," also known as grip tape, is an anti-slip tape applied to a stair tread and is required for safety purposes.

3

Olsen signed a document titled "Owner's Acceptance of Site" for Castellino on September 8, 2006. As of that date, work on building numbers 2 and 5 had been completed.

Kopple testified Olsen was a "maintenance person" who did not have authority to sign any acceptance for Castellino. But the trial court found Kopple's denial not credible. The trial court credited Wiggins's testimony that Olsen was authorized to sign the owner's acceptance for Castellino. Wiggins testified Olsen placed a telephone call to Kopple to discuss the "Owner's Acceptance of Site." And Olsen told Wiggins that Kopple gave Olsen permission to sign the acceptance.

Although Castellino had accepted the site, grip tape had not been installed on all the stair treads at the project. An installer employed by Picerne's stairway subcontractor installed grip tape on every staircase of every building at the project on September 15, 18, and 19, 2006. The installer worked a total of 22½ hours on those dates to accomplish that task.

Picerne's roofing subcontractor also performed roofing work at the project after July 25, 2006. That work included installing ridges, rakes, and hips, waterproofing roof penetrations, and straightening out some of the valleys in the roofs. Some of that work was within the original scope of the subcontractor's contract and was not repair work.

Castellino began renting apartments at the property in October 2006. There were no tenants at the property prior to that time. Picerne asked Castellino to release the project retention proceeds in October 2006.

Picerne recorded a claim of mechanic's lien on November 28, 2006. Picerne's claim included the amounts owed to its subcontractors, Teichert & Son, Inc. (Teichert), American Automatic Fire Protection, Inc., Contractors Door and Millwork, Inc., Hemington Landscape Services, Inc., and Mitchell Jones Concrete, Inc., each of whom separately recorded a mechanic's lien claim against the property.

4

Picerne filed a complaint to foreclose its mechanic's lien on December 29, 2006. The complaint named Castellino and Doe defendants.

Castellino recorded a notice of completion for the project on April 30, 2007. The notice stated the project was completed on April 20, 2007.

The action was stayed in the trial court to permit Castellino and Picerne to arbitrate their claims and counterclaims, in accordance with the terms of their contract. The arbitration included the parties' claims relating to Siena Villas Apartments, an apartment-complex project for which Picerne entered into a contract with Campbell Corners Limited Partnership I (Campbell), an entity which was related to Castellino. The arbitrator awarded Picerne damages in the amount of $2,484,105.20 on the two projects, and over $1.5 million in attorney's fees and costs. The trial court subsequently confirmed the arbitration award and gave Picerne an additional $144,836.15 in prejudgment interest.

Castellino and Campbell then filed separate petitions for relief under Chapter 11 of the Bankruptcy Code.

Castellino, Campbell, and other parties entered into a settlement agreement with Picerne on August 13, 2010. The settlement agreement provided for the payment of the mechanic's lien claims by subcontractors Teichert, American Automatic Fire Protection, Inc., Contractors Door and Millwork, Inc., Hemington Landscape Services, Inc., and Mitchell Jones Concrete, Inc., and the reduction of Picerne's mechanic's lien claim in the amount of any settlement payments made to the subcontractors. American Automatic Fire Protection, Inc., Contractors Door and Millwork, Inc., Hemington Landscape Services, Inc., and Mitchell Jones Concrete, Inc. received settlement payments for their lien claims.

The settlement agreement further provided that the trial court would decide the validity, priority, and amount of Picerne's mechanic's lien. If the trial court determined Picerne's mechanic's lien was valid and senior to any interest of Bank of the West,

5

Picerne would receive a cash payment equivalent to 18 percent of the amount of its lien and then monthly installment payments, including interest at the rate of 4 percent per annum, for the balance.

Shortly after the parties' settlement agreement, the Bankruptcy Court confirmed Castellino's plan of reorganization, which incorporated the terms of the parties' settlement agreement.

Picerne's foreclosure action against Castellino and Bank of the West was then tried by the trial court, sitting without a jury. The trial court issued a statement of decision. It determined the project was completed no earlier than September 8, 2006; Picerne timely recorded its claim of mechanic's lien; Picerne is entitled to foreclose its lien in the amount of $2,562,308.56; and the lien is senior in priority to the deed of trust in favor of Bank of the West. The trial court ordered Picerne's lien foreclosed.

The trial court entered a judgment and decree of mechanic's lien foreclosure. Castellino and Bank of the West appeal from the judgment.

DISCUSSION

I

Castellino and Bank of the West contend Picerne does not have a valid mechanic's lien because Picerne did not record a claim of mechanic's lien within 90 days after substantial completion of the project, as required under former Civil Code section 3115.[1] (Stats. 1969, ch. 1362, § 2, p. 2762.)

We begin by describing our standards for review of this issue. The interpretation of former section 3115 is a question of law which we independently review. (*Moorefield Construction, Inc. v. Intervest-Mortgage Investment Co*. (2014) 230 Cal.App.4th 146, 154 (*Moorefield Construction*).) We follow well settled rules of statutory construction.

---

[1] Undesignated statutory references are to the Civil Code.

6

Our goal is to ascertain and effectuate the intent of the Legislature in enacting the statute. (*T.O. IX, LLC v. Superior Court* (2008) 165 Cal.App.4th 140, 145-146 (*T.O. IX, LLC*).) We begin by looking at the words of the statute. (*Tesco Controls, Inc. v. Monterey Mechanical Co*. (2004) 124 Cal.App.4th 780, 792 (*Tesco Controls, Inc.*).) We also look at the entire statutory scheme of which the subject provision is a part in order to determine legislative intent. (*T.O. IX, LLC, supra,* 165 Cal.App.4th at pp. 145-146.)

The determination of the date of completion of a work of improvement is a question of fact. (*Scott, Blake & Wynne v. Summit Ridge Estates, Inc*. (1967) 251 Cal.App.2d 347, 357 (*Scott, Blake & Wynne*).) We review the trial court's factual findings for substantial evidence. (*Moorefield Construction, supra,* 230 Cal.App.4th at p. 154.) Substantial evidence is evidence "of ponderable legal significance, . . . reasonable in nature, credible, and of solid value." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873, italics omitted.) As the appellants, Castellino and Bank of the West bear the burden of demonstrating that there is no substantial evidence to support a challenged factual finding. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

Our review of the trial court's factual findings presumes that the record contains evidence to sustain every finding of fact. (*Foreman & Clark Corp. v. Fallon, supra,* 3 Cal.3d 875, 881.) We view the evidence in the light most favorable to the prevailing party, giving that party the benefit of every reasonable inference and resolving all conflicts in the evidence in support of the judgment. (*As You Sow v. Conbraco Industries* (2005) 135 Cal.App.4th 431, 454.) We do not reweigh the evidence, consider the credibility of the witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.) If substantial evidence exists, it is of no consequence that the trial court believing other evidence or drawing other reasonable inferences might have reached a contrary conclusion. (*Bowers v. Bernards, supra,* 150 Cal.App.3d at pp. 873-874.)

We next turn to an overview of California's mechanic's lien law. The California Constitution recognizes the right of laborers and material suppliers to have a lien for the value of labor done and materials furnished against the property upon which they have bestowed labor or furnished materials. (Cal. Const., art. XIV, § 3; *English v. Olympic Auditorium, Inc.* (1933) 217 Cal. 631, 638 [formerly Cal. Const., art. XX, § 15].) The California Legislature enacted a mechanic's lien statute to protect laborers, material suppliers, and contractors. (Stats. 1850, ch. 87, §§ 1-14, pp. 211-213; *Betancourt v. Storke Housing Investors* (2003) 31 Cal.4th 1157, 1166 (*Betancourt*).) Effective July 1, 2012, California's mechanic's lien statute is found in sections 8000 through 9566. (Stats. 2010, ch. 697, §§ 16, 20.) But the version of the statute applicable to this case is found in former sections 3082 through 3267. (§ 8052.) The references in this opinion are to the former version of the statute.

The mechanic's lien statute is concerned with the property owner's interest in clear and marketable title. (*Moorefield Construction, supra,* 230 Cal.App.4th at p. 155; *T.O. IX, LLC, supra,* 165 Cal.App.4th at p. 146; *Coast Central Credit Union v. Superior Court* (1989) 209 Cal.App.3d 703, 708, 711 (*Coast Central Credit Union*).) But the statute is intended to inure primarily to the benefit of persons who perform labor or furnish materials for works of improvement. (Stats. 1862, ch. 297, §§ 3, 9, pp. 384, 387; *Connolly Development, Inc. v. Superior Court of Merced County* (1976) 17 Cal.3d 803, 826 (*Connolly*).) Courts have uniformly classified the mechanic's lien statute as a remedial legislation, to be liberally construed for the protection of laborers and material suppliers. (*Betancourt, supra,* 31 Cal.4th at p. 1166.) Hence, doubts concerning the meaning of the statute are generally resolved in favor of the lien claimant. (*Coast Central Credit Union, supra*, 209 Cal.App.3d at p. 711.)

In order to have a valid mechanic's lien, a claimant must record a claim of lien within a prescribed period of time after completion of the work of improvement or after a notice of completion or notice of cessation has been filed. (Stats. 1969, ch. 1362, § 2,

8

p. 2762 [sections 3115 and 3116].) Once recorded, a claim of mechanic's lien constitutes a direct lien on the improvement and the real property to the extent of the interests of the owner or the person who caused the improvement to be constructed. (*Connolly, supra,* 17 Cal.3d at p. 808.) But the failure of a claimant to timely record a claim of lien precludes the enforcement of a mechanic's lien. (*Coast Central Credit Union, supra,* 209 Cal.App.3d at p. 709; *National Lumber Co. v. Kennedy* (1915) 28 Cal.App. 780, 781, 783.)

Section 3115 set forth the window of time within which an original contractor like Picerne must record a claim of mechanic's lien.[2] Section 3115 provided, "Each original contractor, in order to enforce a lien, must record his claim of lien after he completes his contract and before the expiration of (a) 90 days after the completion of the work of improvement as defined in Section 3106[3] if no notice of completion or notice of cessation [of labor] has been recorded, or (b) 30 days after recordation of a notice of completion or notice of cessation [of labor]." (Stats. 1969, ch. 1362, § 2, p. 2762.)

In the case of any work of improvement other than a public work, the Legislature defined the term completion as "actual completion of the work of improvement." (Stats. 1969, ch. 1362, § 2, p. 2753 [section 3086].) In addition, the following are deemed to be equivalent to a completion: (a) the occupation or use of a work of improvement by the

---

[2] An original contractor is a contractor who has a direct contractual relationship with the owner for the work of improvement. (Stats. 1969, ch. 1362, § 2, pp. 2754, 2756 [sections 3088 and 3095].)

[3] " 'Work of improvement' includes but is not restricted to the construction, alteration, addition to, or repair, in whole or in part, of any building . . . , the seeding, sodding, or planting of any lot or tract of land for landscaping purposes, the filling, leveling, or grading of any lot or tract of land, the demolition of buildings, and the removal of buildings." (Stats. 1969, ch. 1362, § 2, pp. 2760-2761 [section 3106].) In general, the term "work of improvement" means the entire structure or scheme of improvement as a whole. (*Ibid.*)

9

owner or his agent, accompanied by cessation of labor thereon; (b) the acceptance by the owner or his agent of the work of improvement; or (c) after the commencement of a work of improvement, a cessation of labor thereon for a continuous period of 60 days, or a cessation of labor thereon for a continuous period of 30 days or more if the owner records a notice of cessation of labor. (Stats. 1969, ch. 1362, § 2, p. 2753 [section 3086].) Section 3086 did not equate the issuance of a certificate of occupancy under building regulations with completion of a work of improvement. (Contra, Stats. 1994, ch. 1046, § 2, p. 6342 [section 3260, subdivision (c) defined date of completion for purposes of that section as including the date of issuance of a certificate of occupancy by the public agency issuing the building permit].)

Substantial evidence supports the trial court's finding that the owner accepted the project as of September 8, 2006. We do not disturb the trial court's credibility determinations with regard to Wiggins and Kopple. (*Clark v. Pullins* (1959) 171 Cal.App.2d 703, 707-708.) The owner's acceptance of the project is the equivalent of completion of the work of improvement under section 3115. (Stats. 1969, ch. 1362, § 2, p. 2753 [section 3086]; Stats. 1969, ch. 1362, § 2, p. 2762 [section 3115].) Picerne timely recorded its claim of mechanic's lien within 90 days after September 8, 2006.

Castellino asserts in summary fashion that Wiggins's testimony is hearsay, and the trial court erred in admitting that testimony. We are not required to examine undeveloped claims. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [the appellant must support claims of error with meaningful argument]; *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482-483 [citing cases without any discussion of their application to the present case results in forfeiture]; *Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984-985 [an appellate court is not required to examine undeveloped claims].)

Castellino and Bank of the West nevertheless claim that the time for Picerne to record its claim of mechanic's lien began to run before September 8, 2006. They assert

10

the phrase "completion of the work of improvement" in section 3115 means substantial completion of the work of improvement, and the project was substantially completed by July 25, 2006, when the City issued the final certificate of occupancy or early August 2006. Castellino and Bank of the West point out Picerne recorded its lien claim more than 90 days after July 25, 2006, or early August 2006. They cite cases construing former Code of Civil Procedure section 1187, a predecessor to section 3115, before that statute was amended in 1929, *Howard S. Wright Construction Company v. BBIC Investors, LLC* (2006) 136 Cal.App.4th 228 (*Howard S. Wright*), and *In re Showplace Square Loft Company, LLC* (Bankr. N.D.Cal. 2003) 289 B.R. 403 (*In re Showplace*) in support of their claim.[4]

There are cases construing the early mechanic's lien statute which interpreted "completion" as substantial completion. Those cases cite the following provision in former Code of Civil Procedure section 1187: "any trivial imperfection in the said work, or in the construction of any building, improvement, or structure, or of the alteration, addition to, or repair thereof, shall not be deemed such a lack of completion as to prevent the filing of any lien." (Stats. 1887, ch. 137, § 3, p. 155.) For example, in *Bianchi v. Hughes* (1899) 124 Cal. 24, the California Supreme Court held a material supplier prematurely recorded its claim of lien when a substantial portion of the subject building was not actually completed when the material supplier recorded its claim. (*Id.* at pp. 26-

---

[4] Before 1929, the provisions in section 3115 were found in Code of Civil Procedure section 1187. (Stats. 1874, ch. 586, § 2, p. 410; Stats. 1887, ch. 137, § 3, pp. 154-155; Stats. 1911, ch. 681, § 4, pp. 1316-1317; Stats. 1919, ch. 146, § 1, pp. 190-191; see Stats. 1929, ch. 870, § 1, pp. 1928-1929; Stats. 1939, ch. 1068, § 1, pp. 2994-2995; Stats. 1947, ch. 28, § 1, pp. 510-512; Stats. 1949, ch. 632, § 1, pp. 1129-1130.) Those provisions were moved to Code of Civil Procedure section 1193.1 in 1951, then to Civil Code section 3115, effective January 1, 1971. (Stats. 1951, ch. 1159, § 1, pp. 2950-2951; Stats. 1951, ch. 1376, § 2, pp. 3290-3293; Stats. 1955, ch. 1511, § 1, pp. 2749-2752; Stats. 1959, ch. 1549, § 1, pp. 3876-3879; Stats. 1963, ch. 1081, § 1, pp. 2541-2544; Stats. 1969, ch. 1362, §§ 2, 3, 11, pp. 2752, 2762, 2781, 2783.)

11

27.) Construing former Code of Civil Procedure section 1187, the Supreme Court said the unfinished work (namely, the stairs leading to the basement) was not a "trivial imperfection." (*Ibid.;* see *Shumway v. Woolwine* (1927) 84 Cal.App. 220, 224-225 [lien was not prematurely filed because the building was substantially completed for more than 30 days before the filing of the lien; the uncompleted work was "trivial in character"].)

In *Hammond Lumber Company v. Yeager* (1921) 185 Cal. 355, the California Supreme Court held a material supplier could not enforce its mechanic's lien because it recorded its lien claim after the statutory recordation period had elapsed. (*Id.* at pp. 357-359.) The claimant in that case argued that even though the owner had accepted and occupied the subject building, the building was not completed for purposes of former Code of Civil Procedure section 1187 because the bathroom flooring and kitchen sinks were subsequently replaced. (*Id.* at p. 358.) The Supreme Court recited the trivial imperfection provision of former Code of Civil Procedure section 1187. (*Ibid.*) It held the trial court's finding that the building was substantially completed when the owner accepted and began occupying the building was sustained by the evidence. (*Id.* at p. 359.) The Supreme Court explained the replacement of defective work in the bathroom and kitchen did not alter the fact that the work had been substantially completed. (*Ibid.*; see also *Grettenberg v. Collman* (1931) 119 Cal.App. 7, 9-11 [lien was recorded too late under the former Code of Civil Procedure section 1187; the cutting of the lawn and trimming of shrubbery, the connecting of gas and electric equipment, the replacement of broken window panes, and the dash-coating of a wall to cover the discoloration which occurred as a result of a leak, were trivial and did not alter the fact that the building and improvements were substantially completed]; *Mott v. Wright* (1919) 43 Cal.App. 21, 25-27 [mechanics' liens were untimely recorded under the former Code of Civil Procedure section 1187; "actual completion" required to fix the time from which claimants must file their claims of lien meant when work required under the terms and

12

requirements of the contract was "substantially completed," and the work of correcting defective work which required about two hours' time was only a trivial imperfection in the work]; *National Lumber Co. v. Kennedy, supra,* 28 Cal.App. at pp. 781, 783 [mechanic's lien was untimely filed under the former Code of Civil Procedure section 1187; the work of replacing a defective skylight did not delay the start of the claim-filing period where the building was otherwise "fully complete and occupied"].)

Cases construing former Code of Civil Procedure section 1187 before it was amended in 1929 do not help our interpretation of the phrase "completion of the work of improvement" in section 3115. This is because former Code of Civil Procedure section 1187 was amended in 1929 to delete the reference to trivial imperfections in the work of improvement. (Stats. 1929, ch. 870, § 1, p. 1928; *Lewis v. Hopper* (1956) 140 Cal.App.2d 365, 366-367.) Unlike the 1951 and 1969 amendments to the statute, the 1929 amendment was not accompanied by a legislative declaration that the 1929 amendment was not intended to change the meaning or substance of the statute. (Stats. 1929, ch. 870, §§ 1-2, pp. 1928-1929; Stats. 1951, ch. 1159, § 5, p. 2958; Stats. 1969, ch. 1362, § 10, p. 2783.) " 'We cannot presume the Legislature . . . engaged in an idle act' " when it deleted the statement in former Code of Civil Procedure section 1187 that any trivial imperfection in the work of improvement shall not be deemed a lack of completion. (*Tesco Controls, Inc.*, *supra*, 124 Cal.App.4th at p. 792.) Rather, when the Legislature deletes an express provision of a statute, we presume it intended to effect a change in the law. (*Clements v. T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 231-232; *Royal Co. Auctioneers, Inc. v. Coast Printing Equipment Co.*, *Inc.* (1987) 193 Cal.App.3d 868, 873; *Bentz Plumbing & Heating v. Favaloro* (1982) 128 Cal.App.3d 145, 149-150 (*Bentz*), superseded by statute on another point as stated in *Moorefield Construction, supra,* 230 Cal.App.4th at p. 159; see *Gikas v. Zolin* (1993) 6 Cal.4th 841, 861 [the court cannot interpret a statute to reinsert a provision the Legislature has deleted].) The Legislature could, in 1929 and thereafter, have easily said "completion of the work of

13

improvement" means substantial completion of the work of improvement, as many cases had found as of 1929, but the Legislature did not do so, even though the terms "substantial completion" and "substantially completed" appear elsewhere in the Civil Code. (§§ 895 [definition of "close of escrow" for construction defect actions], 941, subds. (a), (e) [statute of limitation for construction defect actions]; Stats. 2002, ch. 664, § 45 [section 3110.5, relating to obligations of an owner who contracts for a work of improvement for construction, alteration, addition to, or repair upon a property].) We must infer that by deleting the trivial imperfection provision, the Legislature intended to change the statute governing the timing for recording a claim of mechanic's lien and to require something other than substantial completion of a work of improvement to start the deadline for recording a claim of mechanic's lien.

Cases applying the post-1929 amended statute support our conclusion. *Union Supply Co. v. Morris* (1934) 220 Cal. 331 (*Union Supply Co.*), for example, upheld the trial court's finding that a work of improvement was completed, within the meaning of former Code of Civil Procedure section 1187, only after the date a laborer performed work on the project, certain electrical fixtures were installed, and certain exterior work was completed. (*Id.* at pp. 337-338. [noting that the contract between the owner and the building contractor included work outside the building].) In *Scott, Blake & Wynne, supra,* 251 Cal.App.2d 347, the appellate court interpreted "completion of the work of improvement" in Code of Civil Procedure section 1193.1 as the point when the plaintiff completed its services under its contract. (*Id.* at p. 357; see *Hundley v. Marinko*vich (1942) 53 Cal.App.2d 288, 293 (*Hundley*) [construction of a building was "complete" within the meaning of former Code of Civil Procedure section 1187 when labor on the construction had ceased and the owner occupied the building and recorded a notice of completion, even though the lien claimant subsequently furnished the contractor with a part of a defective lock which was installed in the building].) Interpreting the phrase "completion of the work of improvement" in former Code of Civil Procedure

14

section 1193.1, the court in *Munger & Munger v. McBratney* (1955) 131 Cal.App.2d Supp. 866 (*Munger*) focused on whether certain work was required by the contract plans and specifications and the fact that the plaintiff's crew worked 84 hours to accomplish the required work. (*Id.* at p. Supp. 868.)

Unlike the cases construing the pre-1929 amended version of former Code of Civil Procedure section 1187, the courts in *Union Supply Co., Scott, Blake & Wynne, Hundley*, and *Munger* do not refer to substantial completion or to trivial imperfections.

*Howard S. Wright, supra,* 136 Cal.App.4th 228, a case Castellino and Bank of West cite, does not construe the meaning of the phrase "completion of the work of improvement" in section 3115 or the term "completion" in section 3086. (*Id.* at pp. 238-241.) Instead, *Howard S. Wright* interpreted the phrase "completes his contract" in section 3115. (*Id.* at pp. 238-240.) That phrase set the earliest date when a lien claimant may record a claim of lien. (Stats. 1969, ch. 1362, § 2, p. 2762 [section 3115].) The appellate court in *Howard S. Wright* recognized the phrase "completes his contract" is distinct from the phrase "completion of such work of improvement." (Stats. 1969, ch. 1362, § 2, p. 2762 [section 3115].) A case is not authority for propositions not considered and decided. (*In re Chavez* (2003) 30 Cal.4th 643, 656.)

It is true that in *In re Showplace, supra,* 289 B.R. 403, another case cited by Castellino and Bank of the West, the court said, "[a]lthough section 3115 does not define 'completion' as 'substantial completion,' cases interpreting California's mechanic's lien laws have held that 'substantial completion' triggers the 90-day time period." (*Id.* at p. 409.) But *In re Showplace* cites to cases construing the pre-1929 amended statute. (*Ibid.*) As we have explained, the Legislature deleted the trivial imperfections provision which was the basis for the opinions construing completion to mean substantial completion. For this reason, we disagree with the statement of law from *In re Showplace* upon which Castellino and Bank of West rely.

15

Castellino also cites a leading California real estate law treatise. The authors of that treatise state, "[c]ompletion refers to substantial completion, and under an older version of the Mechanics Lien Law, a work of improvement is deemed complete despite 'trivial imperfections.' " (10 Miller & Starr, Cal. Real Estate (3d ed. 2012) § 28:41, p. 28-147.) But all the cases cited for the proposition applied the pre-1929 amended version of former Code of Civil Procedure section 1187. (*Ibid.*) The treatise authors recognize the decisions they cited were rendered under a former version of the statute which specifically excluded "trivial imperfections." (*Id.* at p. 28-148.) The authors say, even under the current statutory scheme, truly minor matters that do not relate to the performance, occupation, use, or enjoyment of the work of improvement may not preclude a completion, but they do not cite authority for the statement. (*Ibid.*) We do not find the authors' comments helpful to our analysis because the authors do not cite authority supporting their assertion.

In sum, the Legislature deleted the reference to trivial imperfections in the predecessor to section 3115. The Legislature defined completion of the work of improvement as actual completion of the work of improvement and three circumstances which are deemed to be equivalent to a completion. (Stats. 1969, ch. 1362, § 2, p. 2753 [section 3086].) The Legislature did not define "completion of the work of improvement" as substantial completion. Courts have looked at whether the work at issue was required under the claimant's contract in determining whether a work of improvement was completed. (*Union Supply Co., supra,* 220 Cal. at pp. 337-338; *Scott, Blake & Wynne, supra,* 251 Cal.App.2d at p. 357; *Munger, supra,* 131 Cal.App.2d at p. Supp. 868.)

Castellino argues that interpreting the term "completion" in former sections 3086 and 3115 to mean substantial completion would be sound public policy because it would ensure transparency, visibility, objectivity, and certainty in the relationship between the contractor and the owner in the filing of mechanic's liens. However, following the

16

language of the statute by construing "completion" as "actual completion" does not create uncertainty when reference can be made to the parties' agreement and the labor and materials furnished. Moreover, as the statute explains, certain ascertainable circumstances are deemed equivalent to completion: occupation or use of the work of improvement with cessation of labor, acceptance of the work of improvement, or cessation of labor under specified circumstances. In addition, contrary to Castellino's argument, public policy supports the interpretation of completion as actual completion in this specific context. As we have explained, the mechanic's lien statute is intended to inure primarily to the benefit of persons who perform labor or furnish materials for works of improvement, and it is to be liberally construed for the protection of laborers and material suppliers, with doubts concerning the meaning of the statute generally resolved in favor of the lien claimant. Interpreting completion as actual completion gives lien claimants the maximum amount of time to assert their rights before such rights are cut off, whereas interpreting completion as substantial completion could cut off mechanic's lien rights much earlier. The interpretation espoused by Castellino would contravene the purpose of California's mechanic's lien law to protect the right to payment of those who have furnished labor or materials to works of improvement. (*Betancourt, supra*, 31 Cal.4th at p. 1166.) Our construction of the term "completion" in former sections 3086 and 3115 effectuates the intent of the mechanic's lien law and is consistent with the 1929 amendment to former Code of Civil Procedure section 1187.

Substantial evidence supports the trial court's findings that even though the City had issued certificates of occupancy for the 11 buildings within the project, roof and stairway work required under the general contract continued between July 25, 2006 and September 19, 2006. Elizar Ortiz testified he worked 22½ hours on September 15, 18, and 19, 2006, installing grip tape on all of the stairs at the project. The general contract called for the installation of anti-slip grip tape on all concrete stair treads. Ortiz's

17

testimony established the work he performed on September 15, 18, and 19, 2006 was not corrective or repair work.

The president of Picerne's roofing subcontractor testified his company performed roofing work at the project after July 25, 2006. He said such work included straightening out some of the valleys in the roofs, installing nailers and hips on the roof ridges, and nailing trim. The trial court credited the testimony that the roofing subcontractor performed non-warranty roof work for several months past July 2006 and at least until September 2006. Castellino did not begin renting the apartments at the project until October 2006. The roof and stairway work performed after July 25, 2006, is not comparable to adding a few strokes of paint or turning a screw.

Picerne recorded a claim of mechanic's lien on November 28, 2006, which is within 90 days of the date Castellino accepted the project and when the stairway and roofing subcontractors performed work required under their contracts. Accordingly, the trial court did not err in concluding Picerne timely recorded its claim of mechanic's lien under section 3115.

II

Castellino also argues the doctrine of judicial estoppel prevents Picerne from taking contrary positions at arbitration and at trial. Specifically, Castellino says Picerne took the position at arbitration that the project was completed on May 3, 2006, in order to avoid liquidated damages for delay. Castellino also says Picerne made a strategic decision not to arbitrate the timeliness of its claim of lien.

" ' " 'Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] . . .' " [Citation.] The doctrine [most appropriately] applies when: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two

18

positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." ' " (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.*, *Inc.* (2005) 36 Cal.4th 412, 422.) The purposes of the doctrine of judicial estoppel are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. (*Ibid.*) Judicial estoppel is an equitable doctrine, and its application, even where all necessary elements are present, is discretionary. (*Ibid.*)

It is the appellant's burden to affirmatively demonstrate reversible error. (*Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601; *California Pines Property Owners Assn. v. Pedotti* (2012) 206 Cal.App.4th 384, 392.) Here, Castellino has not demonstrated error because it has not shown that any position Picerne took at arbitration with regard to liquidated damages under the general contract is necessarily inconsistent with Picerne's argument at trial that it timely recorded its claim of lien under section 3115. With regard to the timeliness of the filing of Picerne's lien claim, the Bankruptcy Court's order confirming Castellino's plan of reorganization and the settlement agreement between Picerne and Castellino -- both of which followed the completion of arbitration -- contemplate a state court would decide whether Picerne timely recorded its claim of mechanic's lien.

Castellino fails to demonstrate the equitable doctrine of judicial estoppel should apply in this case to preclude Picerne from litigating the validity of its mechanic's lien in state court.

III

Castellino argues each of the 11 buildings within the project was a separate residential unit within the meaning of section 3131; thus, a different deadline for recording a lien claim applied to each of the 11 buildings. Castellino asserts Picerne did not timely record a claim of mechanic's lien as to nine of the apartment buildings because more than 90 days passed between the time Castellino accepted those buildings and the time Picerne recorded its claim of lien.

19

Section 3131 provided, "If a work of improvement consists in the construction of two or more separate residential units, each such unit shall be considered a separate 'work of improvement,' and the time for filing claims of lien against each such residential unit shall commence to run upon the completion of each such residential unit." (Stats. 1984, ch. 148, § 1, p. 512.)  Section 3131 defined "separate residential unit" as "one residential structure, including a residential structure containing multiple condominium units, together with any common area, or any garage or other improvements appurtenant thereto."[5]  (Stats. 1984, ch. 148, § 1, p. 512.)

We have not found, and the parties do not cite, a case construing the phrases "separate residential unit" or "one residential structure" in section 3131 or its predecessor statutes in the context of an apartment complex.  However, the legislative intent is instructive.

The Legislature said it added the provision relating to separate residential units in order to "expedite the construction of housing units and [to] enable veterans and others to more readily obtain a marketable title to homes purchased by them without, however, adversely affecting the rights of those entitled to mechanics' liens as accorded by Section 15 of Article XX of the Constitution." (Stats. 1947, ch. 28, § 2, pp. 512-513.)  The Legislature explained that efforts to alleviate the acute housing shortage in the State at that time were impeded when marketable title to any single residential unit constructed as part of a project could not be obtained until the last house or residential unit in the project

---

[5]  Prior to 1984, section 3131 or its predecessor statutes defined "separate residential unit" as "one residential structure," together with any garage or other outbuildings or improvements appurtenant thereto.  (See, e.g., Stats. 1969, ch. 1362, § 2, p. 2764 [section 3131]; Stats. 1957, ch. 2350, § 1, p. 4079 [former Code of Civil Procedure section 1195.1]; Stats. 1951, ch. 1159, § 1, p. 2952 [former Code of Civil Procedure section 1195.1]; Stats. 1949, ch. 632, § 1, p. 1130 [former Code of Civil Procedure section 1187]; Stats. 1947, ch. 28, § 1, pp. 512 [former Code of Civil Procedure section 1187].)

20

was completed because until such time, a mechanic's lien claim could be recorded against the project. (*Id.* at p. 512.) And the times for completion of the last house in any such project could be as long as one to five years after the completion of the first house in the project. (*Ibid.*) The Legislature said loans to military veterans for the purchase of a house in a multi-separate residential unit project could not go through until the time for filing mechanics' liens had expired and lending institutions could certify their loan was secured by a lien superior to all other liens except taxes and the like. (*Ibid.*) The Legislature was concerned that until the time for filing mechanics' liens had expired, a veteran or anyone else purchasing a home built in a multi-separate residential unit project could not be sure he or she had a clear title to the home. (*Ibid.*) The 1984 amendment to section 3131 sought to extend such protection to the owners of a completed unit within a condominium project. (Sen. Republican Caucus, analysis of Assem. Bill No. 2526 (1983-1984 Reg. Sess.) as amended May 8, 1984, pp.1-2.)

Having in mind the legislative intent behind the provision relating to separate residential units, we conclude the project here involved a single residential unit within the meaning of section 3131. Castellino has not shown that there was separate title for each of the 11 buildings within the project such that completion of the final building within the project could affect marketable title to any individual building or unit within the project. Further, regardless of when it accepted any of the buildings within the project, Castellino filed one notice of completion for the entire work of improvement. Castellino did not file a notice of completion for each building within the project.

Accordingly, section 3130 does not govern the timing for recording a lien claim in this case.[6]

_____

[6] Section 3130 provided, "In every case in which one claim is filed against two or more buildings or other works of improvement owned or reputed to be owned by the same person or on which the claimant has been employed by the same person to do his work or

21

IV

Castellino next claims the judgment is excessive. Castellino contends (A) the trial court awarded the wrong principal sum; (B) the trial court failed to deduct the setoff the arbitrator awarded to Castellino ($115,453.50) from the principal sum; (C) the trial court did not deduct the amount of Teichert's lien claim ($87,651.63) and the cost to Castellino for defending against the subcontractors' lien claims ($92,311.75) from the principal sum; (D) prejudgment interest cannot be included in the amount of the lien; (E) prompt payment penalties cannot be included in the amount of the lien; (F) the trial court did not deduct the amounts of the subcontractors' lien claims and Castellino's defense costs in responding to the subcontractors' lien claims from the amount of prompt payment penalties awarded to Picerne; and (G) the imposition of a 2 percent per month interest continuing after September 4, 2010, is inconsistent with the Bankruptcy Court's order.

---

furnish his materials, whether such works of improvement are owned by one or more owners, the person filing such claim must at the same time designate the amount due to him on each of such works of improvement; otherwise the lien of such claim is postponed to other liens. If such claimant has been employed to furnish labor or materials under a contract providing for a lump sum to be paid to him for his work or materials on such works of improvement as a whole, and such contract does not segregate the amount due for the work done and materials furnished on such works of improvement separately, then such claimant, for the purposes of this section, may estimate an equitable distribution of the sum due him over all of such works of improvement based upon the proportionate amount of work done or materials furnished upon such respective works of improvement. The lien of such claimant does not extend beyond the amount designated as against other creditors having liens, by judgment, mortgage, or otherwise, upon either such works of improvement or upon the land upon which the same are situated. [¶] For all purposes of this section, if there is a single structure on more than one parcel of land owned by one or more different owners, it shall not be the duty of the claimant to segregate the proportion of material or labor entering into the structure on any one of such parcels; but upon the trial thereof the court may, where it deems it equitable so to do, distribute the lien equitably as between the several parcels involved." (Stats. 1969, ch. 1362, § 2, pp. 2763-2764.)

A

Castellino asserts the principal sum due is $1,366,338.91, not the $1,396,338.91 stated in the trial court's statement of decision. Castellino and Picerne define "principal sum" as the amount the arbitrator awarded to Picerne, minus prompt payment penalties. Citing *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42 (*Fladeboe*), Picerne responds that Castellino forfeited its appellate claim by not objecting to the trial court's tentative statement of decision on the ground raised on appeal.

When a statement of decision does not resolve a controverted issue or is ambiguous, any party may bring the omission or ambiguity to the attention of the trial court prior to entry of judgment or in conjunction with a new trial motion or a motion to vacate the judgment under Code of Civil Procedure section 663. (Code of Civ. Proc., § 634.) If an omission or ambiguity is brought to the trial court's attention, the reviewing court will not infer findings or resolve an ambiguity in favor of the prevailing party on that issue. (*Ibid.*) Conversely, if a party does not bring an omission or ambiguity in the statement of decision to the trial court's attention, he or she waives the right to claim on appeal that the statement was deficient in those regards, and the appellate court will imply findings to support the judgment. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134; *Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 896; *Fladeboe, supra*, 150 Cal.App.4th at pp. 59-60.)

In this case, the trial court's use of $1,396,338.91 as the principal sum is not an omission or an ambiguity. But even if Code of Civil Procedure section 634 applies and we infer an implied factual finding in favor of Picerne that the amount of the principal sum due is $1,396,338.91, substantial evidence does not support that implied factual finding. (*Fladeboe, supra*, 150 Cal.App.4th at p. 60 [the appellate court reviews the implied factual findings made pursuant to Code of Civil Procedure section 634 under the substantial evidence standard].)

23

The arbitrator awarded Picerne money damages totaling $1,891,602.80 for the project, minus a setoff of $115,453.50. $1,891,602.80 consists of (1) progress payments, (2) retention, (3) prompt payment penalties, (4) fee on changes, and (5) extended general conditions. $1,366,338.91 is the difference between $1,891,602.80 and $525,263.89, which is the prompt payment penalty component of the award. Accordingly, the correct principal sum is $1,366,338.91. The judgment must be modified to reflect that principal sum.

B

Castellino next claims the principal sum must be reduced by $115,453.50, the amount of the setoff the arbitrator awarded to Castellino. We agree.

Relying on the judgment confirming the arbitration award, the trial court said its award deducted the $115,453.50 setoff. The judgment confirming the arbitration award provides that Picerne is entitled to recover "$1,776,149.30 after set-off." It is true that $1,776,149.30 takes into account the setoff in favor of Castellino.[7] However, $1,776,149.30 includes $525,263.89 in prompt payment penalties, which is not part of the principal sum. Therefore, it is incorrect to use $1,776,149.30 as the principal sum.

The principal sum of $1,366,338.91 does not include a deduction for the setoff in favor of Castellino. $115,453.50 must be subtracted from the principal sum.

C

Castellino also claims the principal sum must be reduced by (i) $87,651.63, the amount of the mechanic's lien claim by Teichert, and (ii) $92,311.75, the legal fees Castellino incurred in defending against the subcontractors' lien claims.

The parties agreed and the Bankruptcy Court ordered that any amounts paid to the five subcontractors who recorded claims of mechanics' liens against the property reduce

---

[7] $1,891,602.80 (principal sum plus prompt payment penalties awarded in arbitration) minus $115,453.50 (setoff awarded to Castellino in arbitration) equals $1,776,149.30.

"dollar-for-dollar" the amount of Picerne's lien claim. The trial court deducted the amount paid to those subcontractors who settled their lien claims ($176,222.10) from the principal sum.

Castellino argues the trial court should also have deducted $87,651.63, the amount attributable to the mechanic's lien claim by Teichert, even though Teichert did not settle its mechanic's lien claim. Castellino cites section 3153 in support of its claim.

Section 3153 provided, "In all cases where a claim of lien is recorded for labor, services, equipment, or materials furnished to any contractor, he shall defend any action brought thereon at his own expense, and during the pendency of such action the owner may withhold from the original contractor the amount of money for which the claim of lien is recorded. In case of judgment in such action against the owner or his property upon the lien, the owner shall be entitled to deduct from any amount then or thereafter due from him to the original contractor the amount of such judgment and costs. If the amount of such judgment and costs exceeds the amount due from him to the original contractor, or if he has settled with the original contractor in full, he shall be entitled to recover back from the original contractor, or the sureties on any bond given by him for the faithful performance of his contract, any amount of such judgment and costs in excess of the contract price, and for which the original contractor was originally the party liable." (Stats. 1969, ch. 1362, § 2, pp. 2767-2768.)

Castellino fails to establish that under section 3153, it is entitled to deduct the amount of Teichert's mechanic's lien from the amount it owes Picerne. Section 3153 permitted a deduction "[i]n case of judgment in [an action to enforce the mechanic's lien by Teichert] . . . against the owner or his property upon the lien," and there is no evidence of a judgment against Castellino or its property upon a lien recorded by Teichert (Stats. 1969, ch. 1362, § 2, pp. 2767-2768 [section 3153]; see, e.g. *Covell v. Washburn* (1891) 91 Cal. 560 [material supplier/subcontractor obtained judgment on its mechanic's lien];

25

*Combs v. Eberhard* (1932) 120 Cal.App. 25, superseded by statute on another point as stated in *Lange v. Fisher* (1983) 146 Cal.App.3d 113, 117 [same].)

For the reasons we have stated, Castellino's claim that section 3153 required the trial court to deduct Castellino's legal expenses in defending against the subcontractor lien claims also fails.

D

Castellino further claims that, as a matter of law, prejudgment interest cannot be included in the amount of a mechanic's lien.

Section 3123 provided that mechanics' liens "shall be for the reasonable value of the labor, services, equipment, or materials furnished or for the price agreed upon by the claimant and the person with whom he or she contracted, whichever is less." (Stats. 1990, ch. 1496, § 1, p. 7047.) Nevertheless, courts have included interest in judgments upon a mechanic's lien. (See, e.g., *Sukut-Coulson, Inc. v. Allied Canon Co.* (1978) 85 Cal.App.3d 648, 653, 656-657 [upholding portion of the judgment wherein the trial court ordered foreclosure on the plaintiff's mechanics' liens to the extent of the lien sum plus prejudgment interest]; *Vowels v. Witt* (1957) 149 Cal.App.2d 257, 258, 262, 265 [affirming judgment decreeing foreclosure of a mechanic's lien for the sum the trial court found the defendants owed the plaintiffs plus interest]; *Associated Wholesale Electric Co. v. S.H. Kress & Co.* (1936) 11 Cal.App.2d 592, 593 [the trial court included interest in its judgment of foreclosure; the appellate court reversed the portion of the judgment relating to when interest can accrue]; *Haupenthal v. Bert L. Perry, Inc.* (1934) 138 Cal.App. 198, 200-202 [judgment in an action to foreclose a mechanic's lien included interest]; *Klimm v. Henry Cowell Lime & Cement Co.* (1918) 38 Cal.App. 239, 240-241 [action to foreclose mechanics' liens resulted in a judgment in favor of the lien claimants for the amounts of their respective claims with interest; the appellate court rejected the defendant's argument that no interest can be allowed in mechanics' lien cases]; *Farnham v. California Safe Deposit & Trust Co.* (1908) 8 Cal.App. 266, 272-274 [judgment

26

foreclosing mechanics' liens properly included interest]; see *Forsgren Associates, Inc. v. Pacific Golf Community Development LLC* (2010) 182 Cal.App.4th 135, 159 (*Forsgren*) [stating, in an action to foreclose mechanics' liens, that prejudgment and postjudgment interest were proper if based on a liquidated claim].)

The cases Castellino cites -- *Forsgren, supra,* 182 Cal.App.4th 135, *Bentz, supra,* 128 Cal.App.3d 145, and *Lambert v. Superior Court* (1991) 228 Cal.App.3d 383 (*Lambert*) -- do not require a contrary conclusion. *Lambert* does not address whether pre- or postjudgment interest is proper in a foreclosure judgment arising from a mechanic's lien. (*Forsgren, supra*, 182 Cal.App.4th at p. 158; *Lambert, supra*, 228 Cal.App.3d at p. 389 [holding that section 3123 did not permit a lien for delay damages].) The appellate court in *Bentz* reversed the portion of the judgment denying the lien claimant prejudgment interest. (*Bentz,* at pp. 152-153.) The court said where the party claiming prejudgment interest holds a liquidated contractual claim subject to an unliquidated setoff for defective performance, prejudgment interest should be awarded on the balance of the claim after deduction of the unliquidated setoff. (*Id.* at p. 152.)

Citing *Bentz, supra*, 128 Cal.App.3d 145, the appellate court in *Forsgren* said an award of pre- and postjudgment interest is proper if the award is based on a liquidated claim. (*Forsgren, supra,* 182 Cal.App.4th at p. 159.) The court in *Forsgren* also said section 3123 did not preclude the trial court from awarding interest on the lien award. (*Id.* at p. 158) *Forsgren* did not say or hold that interest can never be awarded in an action to foreclose a mechanic's lien.

The trial court did not err in including prejudgment interest in the lien amount.

E

Castellino also argues prompt payment penalties cannot be included in the lien amount.

Typically, the owner of a work of improvement withholds a percentage of the payments due under a construction contract for work already performed as a retention

27

when the contract calls for installment or progress payments. (*Yassin v. Solis* (2010) 184 Cal.App.4th 524, 535.) The retention provides an incentive for the contractor to complete its work properly, while reducing the owner's risk of the contractor's nonperformance. (*Ibid.*) Section 3260 set forth when the owner of a private work of improvement must release retention proceeds. (Stats. 1994, ch. 1046, § 1, pp. 6342-6343.) If retention proceeds are not released within the time required by section 3260, the owner is subject to a charge of 2 percent per month on the improperly withheld proceeds, in lieu of any interest otherwise due. (Stats. 1994, ch. 1046, § 1, p. 6343 [section 3260, subdivision (g)].)

The Legislature said the section 3260, subdivision (g) penalty was provided "in lieu of any interest otherwise due." (Stats. 1994, ch. 1046, § 1, p. 6343 [section 3260, subdivision (g)].) As we have explained, interest can be awarded in an action to foreclose a mechanic's lien. *Lambert, supra,* 228 Cal.App.3d 383, the only case Castellino cites in opposition to including prompt payment penalties in the lien amount, does not hold to the contrary. Construing the mechanic's lien law liberally for the benefit of laborers and material suppliers, we conclude the trial court did not err in including the 2 percent prompt payment penalty in the lien amount.

The judgment includes an amount of 2 percent per month, whether labeled a prompt payment penalty or prejudgment interest. The arbitrator awarded Picerne a prompt payment penalty at the rate of 2 percent per month through December 5, 2008. The order confirming the arbitration award and judgment thereon awarded Picerne a prompt payment penalty at the same rate for the period December 5, 2008 through June 11, 2009. The judgment in this foreclosure action awarded Picerne prejudgment interest, also at the rate of 2 percent per month, for the period June 12, 2009 through December 6, 2011. As we have explained, whether characterized as a prompt payment penalty or prejudgment interest, the 2 percent amount was appropriately imposed. Castellino's argument lacks merit.

28

F

Castellino further contends the prompt payment penalty component of the arbitration award ($525,263.89) must be reduced because, under section 3153, Castellino is entitled to deduct (1) the $87,651.63 Teichert claim, (2) its $92,311.75 legal fees in defending against the subcontractors' lien claims, and (3) the $176,222.10 paid to the subcontractors who settled their lien claims.

We have rejected Castellino's claims that section 3153 requires us to deduct, from the principal sum, the amount of Teichert's mechanic's lien claim and Castellino's defense costs in relation to the subcontractors' lien claims. We reject Castellino's related claims concerning a deduction from prejudgment interest for the same reasons. Castellino fails to demonstrate that section 3153 applies here. And Castellino does not cite any authority other than section 3153 for its claim that interest attributable to the mechanics' liens by the settling subcontractors must be deducted from the judgment.

" 'Proceedings for the foreclosure of a mechanics' [*sic*] lien are proceedings in equity in which the court will apply equitable principles.' " (*T.O. IX, LLC, supra*, 165 Cal.App.4th at p. 148.) The award of prompt payment penalties implies a finding that Castellino wrongfully withheld monies from Picerne. (Stats. 1994, ch. 1046, § 1, p. 6343 [section 3260, subdivision (g)]; *Taylor v. Van-Catlin Construction* (2005) 130 Cal.App.4th 1061, 1068.) Picerne and Castellino each paid one-half of the sums paid in settlement to the settling subcontractors. Castellino fails to show why, under these circumstances, equity requires it should receive a benefit in the form of the requested deduction.

Castellino claims, without citation to the record, that the settling subcontractors agreed to forego any interest award to which they may have been entitled and that Picerne delayed in resolving the claims by the settling subcontractors. The claims are forfeited. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

29

G

Castellino also argues the imposition of 2 percent per month in interest, continuing after September 4, 2010, is inconsistent with the Bankruptcy Court's order, which limits interest to 4 percent per annum starting on September 2010. We disagree.

Under the order of the Bankruptcy Court, the trial court would determine the validity of Picerne's mechanic's lien and whether Picerne's lien is senior in priority to Bank of the West's interest in the property. Castellino concedes the Bankruptcy Court authorized the trial court to determine the amount of Picerne's lien. The Bankruptcy Court did not say the trial court could not award prejudgment interest as part of Picerne's lien. The Bankruptcy Court order says if the trial court determined Picerne's lien was valid and senior to the lien by Bank of the West, a trust account funded by EL II Properties Trust u/d/t Dated July 1, 1983, will pay Picerne "as promptly as possible." With regard to the timing of payment, the Bankruptcy Court order states Picerne will receive a cash payment equal to 18 percent of the amount due, "net of any reduction in the amount of the Subcontractors [*sic*] Secured Claims." The remainder of the amount due would be paid over five years, with each monthly payment to be computed based on a 10-year amortization with interest computed at the rate of 4 percent per annum. The monthly installment payments permitted under the Bankruptcy Court order, which includes 4 percent per annum interest, is distinct from the amount of Picerne's lien, which was to be decided by the trial court.

Picerne is entitled to a judgment of $2,416,855.06, calculated as follows:

$1,366,338.91 - "principal sum"

minus $ 115,453.50 - setoff in favor of Castellino

minus $ 176,222.10 - sums paid to settling contractors

plus $1,342,191.75 - prejudgment interest through December 6, 2011

30

V

Bank of the West contends Picerne's complaint against it is time-barred because Picerne did not name Bank of the West as a defendant in the foreclosure action within 90 days after Picerne recorded its claim of mechanic's lien. Bank of the West argues Picerne should have named Bank of the West as a defendant in the original foreclosure complaint because at the time it filed that complaint, Picerne was aware of facts sufficient to cause a reasonable plaintiff to believe it was probable Picerne had a claim against Bank of the West.

To enforce a mechanic's lien, the lien claimant must file a complaint to foreclose its lien within 90 days after it timely recorded its claim of lien.[8] (Stats. 1984, ch. 871, § 1, pp. 2944-2945 [section 3144]; *Grinnell Fire Protection Systems Co. v. American Savings & Loan Assn*. (1986) 183 Cal.App.3d 352, 355 (*Grinnell*).) The complaint must name all parties to be bound by the action within the 90-day period specified in section 3144. (*Westfour Corp. v. California First Bank* (1992) 3 Cal.App.4th 1554, 1558 (*Westfour*); *Grinnell, supra,* 183 Cal.App.3d at p. 354.) Where a lien claimant does not have actual knowledge of another party's interest in the subject property, however, the claimant can satisfy the requirements of section 3144 by naming that party as a Doe defendant, pursuant to Code of Civil Procedure section 474, and amending the complaint to substitute that party for a Doe defendant when the claimant gains actual knowledge of

---

[8] Section 3144 provided, "(a) No lien provided for in this chapter binds any property for a longer period of time than 90 days after the recording of the claim of lien, unless within that time an action to foreclose the lien is commenced in a proper court . . . . [¶] (b) If the claimant fails to commence an action to foreclose the lien within the time limitation provided in this section, the lien automatically shall be null and void and of no further force and effect." (Stats. 1984, ch. 871, § 1, pp. 2944-2945.)

31

that party's interest in the property.**9** (*Westfour, supra*, 3 Cal.App.4th at p. 1558; *Sobeck & Associates, Inc. v. B & R Investments No. 24* (1989) 215 Cal.App.3d 861, 866 (*Sobeck*); *Grinnell, supra*, 183 Cal.App.3d at pp. 354, 358-359.)  Construing Code of Civil Procedure section 474 liberally in such circumstances serves the remedial purpose of the mechanic's lien law.  (*Grinnell, supra*, 183 Cal.App.3d at pp. 362-363.)

" ' "Ignorance of the facts is the critical issue [under Code of Civil Procedure section 474], and whether it be due to misinformation or negligence is not relevant." ' " (*Westfour, supra*, 3 Cal.App.4th at p. 1560.)  There is no requirement that the plaintiff exercise diligence to discover the identity of the defendant after filing the complaint. (*Ibid.; Sobeck, supra,* 215 Cal.App.3d at p. 867; *Grinnell, supra*, at p. 359.)

Here, Picerne recorded its claim of mechanic's lien on November 28, 2006.  It filed a complaint to foreclose the lien within 90 days thereafter.  But Picerne did not name Bank of the West as a defendant within section 3144's 90-day period.  Instead, Picerne amended its complaint to designate Bank of the West as a Doe defendant after the section 3144 90-day period had expired.

The trial court found Picerne did not have actual knowledge that Bank of the West was the new construction lender on the project or that Bank of the West recorded a deed of trust on the property.  Substantial evidence supports those factual findings.

The person in charge of the project for Picerne testified that although he was aware Castellino wanted to refinance the loan for the project, Picerne did not consent to substitute the original construction lender.  Moreover, Picerne did not know Castellino actually substituted Bank of the West for the original lender over Picerne's objection.

---

**9** Code of Civil Procedure section 474 provides, in relevant part, "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly."

Picerne's project manager and assistant superintendent did not know Bank of the West provided financing for the project. Bank of the West recorded a deed of trust in relation to the project on May 24, 2006. But the person in charge of the project for Picerne did not know about that deed of trust until the arbitration in this case. Bank of the West's construction inspector testified he did not send Picerne a copy of Bank of the West's deed of trust.

Picerne satisfied the requirements of section 3144 by filing its foreclosure complaint within 90 days after recording its claim of mechanic's lien and designating Bank of the West as a Doe defendant when it gained actual knowledge of the bank's interest in the property. (*Westfour, supra*, 3 Cal.App.4th at pp. 1558-1560; *Grinnell, supra*, 183 Cal.App.3d at pp. 354, 358-359.) Even if we adopt the standard Bank of the West proposes, substantial evidence showed Picerne was not aware of any facts sufficient to cause a reasonable plaintiff to believe Bank of the West probably had an interest in the property.

### DISPOSITION

The judgment is modified to provide that the mechanic's lien is in the amount of $2,416,855.06. The judgment is affirmed as modified. Each party shall bear its own costs on appeal.

/S/
Mauro, J.

We concur:

/S/
Nicholson, Acting P. J.

/S/
Robie, J.

33